UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROCHELLE WYNES, et al.,                No. 2:10-cv-00702-MCE-GGH

      Plaintiffs,

    v.                                     **MEMORANDUM AND ORDER**

KAISER PERMANENTE HOSPITALS,
et al.,

      Defendants.

----oo0oo----

The dispute arises over the termination of Plaintiffs by Defendant employer on alleged grounds of age and disability discrimination.  Defendants Kaiser Permanente Hospitals, Kaiser Permanente, Inc., Ruby Gartrell, Luann Lemay, Henry Amos, Maria Zayac, Barbara Voors, and Cornelius Stewart ("Defendants") have now filed concurrent motions: (1) a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure[1] 12(b)(6) with respect to both entire claims and as to individual Defendants (ECF No. 36); and (2) a Motion to Strike pursuant to Rule 12(f) (ECF No. 37.)

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

For the reasons stated below, Defendants' 12(b)(6) Motion to
Dismiss is granted in part with leave to amend and Defendants'
12(f) Motion to Strike is also granted in part.

## STATUTORY FRAMEWORK

The Department of Fair Employment and Housing ("DFEH") is
the agency responsible for receiving and investigating employment
discrimination claims in the State of California.  For state
employment discrimination claims brought under California's Fair
Employment and Housing Act ("FEHA"), the aggrieved individual may
file a complaint in writing with the DFEH.  Cal. Gov't Code
§ 12960(b).  If the DFEH takes no action within 150 days or
determines prior to that time that no action will be taken, the
individual will be entitled to a right-to-sue letter ("RTS
Letter"), which shall be issued by the DFEH upon request.  Cal.
Gov't Code § 12965(b).  A RTS Letter grants that individual the
right to bring a civil action against the named employer for the
charges listed in the DFEH complaint.  The individual shall have
one year from the date the RTS letter was issued to file a civil
suit against the employer.  <u>Id.</u>

///
///
///
///
///
///
///

2

1      The federal agency monitoring employment discrimination
2 claims is the Equal Employment Opportunity Commission ("EEOC").
3 For claims brought under the Americans with Disabilities Act of
4 1990 ("ADA") or the Age Discrimination in Employment Act of 1967
5 ("ADEA"), an aggrieved individual must first exhaust his or her
6 administrative remedies, which requires filing a charge with the
7 EEOC detailing facts underlying the discrimination so that an
8 investigation may begin.  42 U.S.C.A. § 2000e-5(b).  Within ten
9 days, the EEOC shall serve notice of the charge on the employer
10 and begin an investigation.  Id.  The complainant shall have the
11 right to proceed against the employer in a civil action once a
12 charge is either dismissed by the EEOC, or 180 days have passed
13 since it was filed and the Attorney General has not initiated a
14 civil action in the matter.  42 U.S.C.A. § 2000e-5(f)(1).  An
15 individual may bring a civil action against the employer on the
16 matters contained in the charge within 90 days after an RTS
17 Letter is issued by the EEOC.  Id.
18      Because of a work-sharing agreement between the two
19 agencies, a complaint filed with the DFEH that alleges federal
20 claims will be deemed filed with the EEOC as well.  Reciprocally,
21 a complaint filed with the EEOC alleging state claims will
22 automatically be filed with the DFEH.  No plaintiff may proceed
23 with a civil suit before receipt of, or entitlement to, a RTS
24 Letter from either the DFEH or EEOC.
25 ///
26 ///
27 ///
28 ///

1
**BACKGROUND**[2]

2

3      Plaintiffs Rochelle Wynes, Marsha Scribner, Linda Baerresen,

4  and Ruth Simpson ("Plaintiffs") were registered nurses employed

5  by Kaiser Foundation Hospitals for several years before they were

6  terminated in 2008 and 2009.[3]  At the time of their termination,

7  all Plaintiffs except Ruth Simpson were employed as senior

8  discharge planners (also referred to as "patient care

9  coordinators").  All Plaintiffs except Marsha Scribner are

10  persons of color.  All named Plaintiffs are over 40 years of

11  age.[4]

12

13      **A.    Rochelle Wynes**

14

15      Plaintiff Wynes is an African American woman who was

16  terminated in March 2009 at 52 years of age after approximately

17  27 years of employment with Kaiser.  Plaintiff Wynes alleges that

18  after complaining about improper patient releases and transfers,

19  she became ill and felt a significant amount of stress from her

20  illness and futile patient advocacy.  She took disability leave

21  for approximately one year due to this stress.

22

23      [2] The factual assertions in this section are based on the
    allegations in Plaintiffs' First Amended Complaint unless
24  otherwise specified.

25      [3] The Complaint also names Kaiser Permanente, Inc. as a
    Defendant.  However, Defendants assert that this organization is
26  in Southern California and never employed any of the Plaintiffs.

27      [4] The Age Discrimination in Employment Act ("ADEA")
    establishes 40 as the threshold age to qualify for protection.
28  29 U.S.C. § 631(a)

4

Plaintiff Wynes alleges that she experienced harassment and discrimination both before and after her disability leave in the form of false write-ups for minimal or non-existent complaints, fabricated allegations of poor performance, and negative evaluations.

Plaintiff Wynes contends that these actions have been Kaiser's policy for many years and begin once Kaiser formulates a plan to terminate that employee. Two days after her return to the work place after disability leave, Plaintiff Wynes alleges she was suspended without justification and then wrongfully terminated.

On March 24, 2009, Plaintiff Wynes submitted a complaint to the DFEH regarding wrongful termination based upon age, gender, racial, and freedom of association discrimination, including harassment and retaliation claims. That same day, the DFEH issued a Notice of Case Closure and RTS Letter to Plaintiff Wynes. Since receipt of this RTS Letter, Plaintiff Wynes has submitted additional charges to the DFEH regarding racial discrimination and retaliation. Plaintiff Wynes alleges that the DFEH will issue no further RTS Letters to her, and that the one she has covers the subsequent charges submitted to the DFEH. On July 20, 2010, Plaintiff Wynes submitted a further supplement to her DFEH complaint alleging denial of disability benefits. Plaintiff Wynes was notified on August 4, 2010 that her charge of discriminatory treatment regarding the disability plan would also be included within her existing RTS Letter.

///

///

1        **B.    Marsha Scribner**

2

3        Plaintiff Scribner was terminated in November 2008 at 64

4   years of age after approximately seven years of employment with

5   Kaiser.   Plaintiff Scribner alleges she was accosted and battered

6   when Defendant Zayac abruptly, and without cause, pulled head

7   phones off her head.   She alleges further that Defendants sent

8   harassing cards to her house with repeated and annoying

9   references to her professional attire, behavior and timeliness.

10  The harassment allegedly continued after she made a complaint to

11  Human Resources.   Plaintiff Scribner additionally contends that

12  Defendants manufactured pretextual complaints and write-ups prior

13  to her termination.   The reason given for her termination was

14  angering a patient's family on more than one occasion.   She

15  alleges that post-termination, Defendants falsely and maliciously

16  asserted she was terminated for cause and bad performance so that

17  she would be denied unemployment benefits.   Plaintiff Scribner

18  claims she was replaced by a younger, less qualified woman.

19       On June 30, 2009, Plaintiff Scribner submitted a complaint

20  to the DFEH and EEOC regarding age discrimination.   A year later

21  she requested cessation of the investigation and issuance of a

22  Notice of Right to Sue.   In July 2010, the EEOC duly issued a

23  "Dismissal and Notice of Rights" as to her administrative

24  complaint.

25  ///

26  ///

27  ///

28  ///

## C.   Linda Baerresen

Plaintiff Baerresen was employed as a discharge planner, and is of Chinese and Hawaiian ancestry.  She was terminated in October 2008 at 59 years of age.  Prior to termination, she was being treated by in-house psychiatrists for what she alleges was severe emotional abuse from a hostile work environment.  Upon her return to work, she claims she was not given accommodation for her disability, and thereafter, she alleges she was discharged abruptly and without reason.  Plaintiff Baerresen alleges false write-ups in order to force her to retire or to justify Kaiser's eventual wrongful termination.  Baerresen claims she was terminated while absent and being treated due to the extreme stress and harassment she was experiencing.

On September 25, 2009, Plaintiff Baerresen submitted charges to DFEH alleging age, race, and disability discrimination.  On October 5, 2009, a letter was sent to Plaintiff Baerresen, though she has no memory of receiving it.  Plaintiffs submitted a Supplement to the First Amended Complaint in the instant civil matter (ECF No. 35) to allege receipt of such a letter from the DFEH.  Plaintiffs' Supplement to the First Amended Complaint as written is unclear, however, as to whether this was a RTS letter or some other communication from the DFEH.  At the time of filing the DFEH complaint, Plaintiff Baerresen was seeking an investigation rather than a RTS letter.

///

///

///

7

1    **D.    Ruth Simpson**

2

3        Plaintiff Simpson is a woman of African and Jamaican
4    descent, and was terminated after more than 20 years of
5    employment with Kaiser.  For part of 2008, she was on disability
6    leave due to the stress of a hostile work environment and was
7    treated by an in-house psychiatrist.  Prior to disability leave,
8    Plaintiff Simpson alleges Defendants issued pretextual write-ups,
9    gave her assignments that were designed for failure, unevenly
10   assigned chores out of line with her seniority and position, and
11   engaged in unfair scheduling.

12       While on disability leave, Plaintiff Simpson alleges she was
13   treated by Kaiser physicians who told her at the time that she
14   had a cardiac condition related to her stress.  She claims
15   Defendants did not offer accommodation upon her return to work.
16   One of the few African Americans in management, Plaintiff Simpson
17   alleges that she was told she would not be promoted further
18   because of her age, and that Kaiser wanted younger people who
19   were more malleable to have those positions.  In 2009, Plaintiff
20   Simpson submitted a complaint to the DFEH and EEOC regarding
21   race, age, and disability resulting in forced retirement.  On
22   September 22, 2010, a RTS Letter was issued by the EEOC for these
23   charges.

24   ///

25   ///

26   ///

27   ///

28   ///

8

1    **E.    Plaintiffs' Joint Civil Complaint**

2

3        Plaintiffs filed their First Amended Complaint ("FAC") with
4    the court on December 20, 2010 alleging numerous state and
5    federal claims.  Plaintiffs further added to their FAC by filing
6    a Supplement to the First Amended Complaint ("Supplement") on
7    December 28, 2010 containing additional information regarding
8    Plaintiffs Baerresen, Scribner, and Simpson.  Defendants move to
9    dismiss the following claims: (1) first claim for wrongful
10   termination in violation of ADEA as to individual Defendants;
11   (2) second claim for violations of the ADA by Defendant Kaiser;
12   (3) fourth claim for discrimination and retaliation by Defendant
13   Kaiser in violation of federal and state law, and public policy;
14   (4) fifth claim for wrongful termination in violation of public
15   policy by both Defendant Kaiser and individual Defendants; (5)
16   sixth claim for intentional infliction of emotional distress; and
17   (6) seventh claim for breach of contract against both Defendant
18   Kaiser and individual Defendants.
19        Defendants additionally move to strike portions of
20   Plaintiffs' FAC including: (1) impertinent statements regarding
21   allegations that can be addressed only by the National Labor
22   Relations Board under the National Labor Relations Act;
23   (2) improper reference to "Kaiser Roseville" as it has no
24   essential relationship to Plaintiffs' claims for relief; and
25   (3) immaterial reference to inadmissible decision of the
26   California Unemployment Insurance Appeals Board awarding
27   Plaintiff Scribner benefits.
28   ///

9

**STANDARD**

**A.   Rule 12(b)(6) Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  Though "a complaint attacked by a Rule 12(b)(6) motion" need not contain "detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (<u>quoting</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 2869 (1986)).  A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> (<u>citing</u> 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) ("[T]he pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

///

///

///

10

1    Further, "Rule 8(a)(2)...requires a 'showing,' rather than a

2 blanket assertion, of entitlement to relief.  Without some

3 factual allegation in the complaint, it is hard to see how a

4 claimant could satisfy the requirements of providing...grounds on

5 which the claim rests." Twombly, 550 U.S. at 555 n.3 (internal

6 citations omitted).  A pleading must then contain "only enough

7 facts to state a claim to relief that is plausible on its face."

8 Id. at 570.  If the "plaintiffs...have not nudged their claims

9 across the line from conceivable to plausible, their complaint

10 must be dismissed." Id.

11    Once the court grants a motion to dismiss, it must then

12 decide whether to grant a plaintiff leave to amend.  Rule 15(a)

13 authorizes the court to freely grant leave to amend when there is

14 no "undue delay, bad faith, or dilatory motive on the part of the

15 movant." Foman v. Davis, 371 U.S. 178, 182 (1962).  In fact,

16 leave to amend is generally only denied when it is clear that the

17 deficiencies of the complaint cannot possibly be cured by an

18 amended version.  See DeSoto v. Yellow Freight Sys., Inc.,

19 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v. Pacifica Police

20 Dept., 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint should

21 not be dismissed under Rule 12(b)(6) unless it appears beyond

22 doubt that the plaintiff can prove no set of facts in support of

23 his claim which would entitle him to relief.") (internal

24 citations omitted).

25 ///

26 ///

27 ///

28 ///

**B.    Rule 12(f) Motion to Strike**

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The "function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (rev'd on other grounds Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)) (internal citations and quotations omitted).  Matter that is impertinent "consists of statements that do not pertain, and are not necessary, to the issues in question," Id. (internal citations and quotations omitted).

**ANALYSIS**

**A.    Motion to Dismiss**

Defendants filed a 12(b)(6) Motion to Dismiss attacking Plaintiffs' second, fourth, fifth, sixth, and seventh claims as factually and legally deficient, and Plaintiffs' first, fifth, and seventh claims against the individual Defendants for lack of individual liability.

///
///

12

1          **1.   Individual Defendants' Violation of ADEA**

2

3          Defendants assert that the individual Defendants in the

4     instant action do not have liability under the ADEA, and

5     Plaintiffs therefore have not stated a claim upon which relief

6     can be granted against the individual Defendants.

7          The ADEA prohibits employers from failing or refusing to

8     hire, and from discharging or discriminating against an older

9     worker solely because of that worker's age.  29 U.S.C. § 621 et

10    seq.  The term "employer" is defined as twenty or more employees

11    for each working day in each of twenty or more calendar weeks.

12    29 U.S.C. § 630(b).  "Employer" also refers to an agent of such a

13    person.  Id.  The purpose of the provision including agents was

14    to incorporate respondeat superior liability into the statute,

15    and not to impose liability on individual supervisors.  Miller v.

16    Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir. 1993).

17    Individual defendants have no liability under the ADEA statutory

18    scheme, and claims against defendants in their individual

19    capacities may be properly dismissed for failure to state a

20    claim.  Id. at 588.

21         Defendants request dismissal of Plaintiffs' first claim for

22    violations of the ADEA by the individual Defendants as the ADEA

23    does not permit individual liability.  Defendants point to the

24    FAC where Plaintiffs state that the individual Defendants were

25    all supervisory employees of Defendant Kaiser.  (First Am. Compl.

26    at ¶ 4.)  Plaintiffs have cited to no countervailing authority

27    which supports an ADEA claim against individual supervisors.

28    ///

13

Because the Ninth Circuit has explicitly held that the ADEA does not impose liability on individual supervisors, this Court once again holds that Plaintiffs' first claim for violation of ADEA must be dismissed as to the individual Defendants, Ruby Gartrell, Luann LeMay, Henry Amos, Maria Zayak, Barbara Voors, Suzanne Gray, and Cornelius Stewart.  Such a deficiency is not one that can be remedied by Plaintiffs as settled law clearly forbids suits against individuals.  Defendants' Motion to Dismiss Plaintiffs' first claim for violations of the ADEA as to the individually named Defendants is GRANTED without leave to amend.

## 2.   Violation of ADA

Defendants contend that both Plaintiffs Wynes and Baerresen have still failed to allege compliance with the administrative exhaustion requirements of the ADA.  Defendants note that the Supplement, which attempted to remedy this defect as to Plaintiff Baerresen, does not allege that she received a RTS Letter from either the DFEH or EEOC.  Defendants further assert that Plaintiff Wynes does not allege in the FAC that she even filed a charge alleging disability discrimination.

The ADA defers to the EEOC, at 42 U.S.C. § 2000e-5, to set forth the proper procedures to be followed when bringing an employment discrimination claim under the ADA.  42 U.S.C. § 12117(a).

///

///

///

14

The prerequisites for an employment discrimination suit are met once petitioner has "(1) filed timely a charge of employment discrimination with the Commission, and (2) received and acted upon the Commission's statutory notice of the right to sue. 42 U.S.C. § 2000e-5(b), (e), and (f)." Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974).

"[I]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.' " Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990) (internal citations omitted).  The complainant shall have the right to proceed against the employer in a civil action once either a charge is dismissed by the EEOC, or 180 days have passed since filing the charge and the Attorney General has not filed a civil action in the matter.  42 U.S.C.A. § 2000e-5(f)(1).  A Notice of Case Closure also constitutes a right-to-sue notice.  (Procedures of the Dep't of Fair Employment and Hous. (proposed Feb. 19, 2010) (to be codified at Cal. Code Regs., tit. 2, § 10032(b))).  Even when a plaintiff seeks judicial relief for claims not listed in the original EEOC charge, the claim may nevertheless be permitted to proceed if the discrimination alleged is like, or reasonably related to, allegations in the EEOC charge.  Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).  The language of EEOC charges must be construed with the utmost liberality "since they are made by those unschooled in the technicalities of formal pleading." Id.

///

15

1            **i.   Plaintiff Wynes**

2

3      It appears from the FAC that on July 20, 2010, Plaintiff
4  Wynes did in fact submit a further supplement to her DFEH
5  complaint alleging that she was experiencing a denial of
6  disability benefits. (First Am. Compl. at ¶ 32.)  Plaintiff Wynes
7  was notified on August 4, 2010 that her claims regarding the
8  disability plan would also be included with her existing Notice
9  of Case Closure.  Though the DFEH's regulation permitting a
10 Notice of Case Closure to constitute a right to sue is not yet an
11 official regulation, the proposed regulation evinces DFEH's
12 intent that a Notice of Case Closure serve the same purpose as a
13 RTS Letter.

14      Plaintiff Wynes's DFEH charge was specifically regarding
15 mismanagement of her disability plan and not disability
16 discrimination in her termination.  However, because courts must
17 construe these charges with the "utmost liberality," this Court
18 finds that the charge alleging discrimination in her disability
19 plan is sufficient.  Because Plaintiff Wynes did allege in her
20 complaint that she filed a claim regarding discrimination in
21 regard to her disability plan, and received a Notice of Case
22 Closure, this Court finds she has exhausted her administrative
23 remedies pursuant to 42 U.S.C. § 2000e-5.  Defendants' Motion to
24 Dismiss Plaintiff's second claim for violations of the ADA is
25 DENIED as it pertains to Plaintiff Wynes.

26 ///

27 ///

28 ///

16

1

2

### ii.  Plaintiff Baerresen

3        Plaintiff Baerresen submitted a charge of disability

4   discrimination in her initial complaint to the DFEH on September

5   25, 2009.  The FAC is not clear as to whether the "Notice" she

6   received on October 5, 2009 is a Notice of Case Closure, a mere

7   Notice to Defendants of the claim, or some other Notice from the

8   DFEH.  Regardless of whether she received an official RTS Letter,

9   more than 180 days have passed since filing the charge, and under

10  42 U.S.C. § 2000e-5, this passage of time is sufficient to

11  entitle Plaintiff Baerresen to a RTS Letter, and to pursue civil

12  litigation.  The FAC does not state whether the Attorney General

13  has initiated a civil claim against Kaiser, which would preclude

14  Plaintiff Baerresen from pursuing a civil action against

15  Defendants.  However, this Court must look at the FAC in the

16  light most favorable to the Plaintiffs.  As such, this Court

17  gives Plaintiff Baerresen the benefit of the doubt, and permits

18  her to continue with this claim.  Defendants' Motion to Dismiss

19  Plaintiff's second claim for violations of the ADA is DENIED as

20  it pertains to Plaintiff Baerresen.

21

22          **3.    Violation of Federal and State Law and Public**
                    **Policy**
23

24        Plaintiffs' fourth cause of action is entitled

25  "Discrimination and Retaliation by Kaiser in Violation of Federal

26  and State Law and Public Policy."  Defendants argue that this

27  claim should be dismissed as to Plaintiff Baerresen because she

28  failed to exhaust administrative remedies.

                                   17

Defendants maintain that the FAC contains no allegation in the fourth claim that she filed either a disability discrimination or a retaliation charge with the EEOC, and that the FAC fails to allege that she received a RTS Letter from either the EEOC or DFEH.

### i.   Baerresen's Disability Discrimination Charge

Plaintiffs' fourth claim does not specifically allege that Plaintiff Baerresen filed a disability discrimination charge with either the EEOC or DFEH.  However, paragraph 44 of the FAC incorporates all prior paragraphs, and paragraph 11 was modified in Plaintiffs' Supplement to allege such a discrimination charge. The Supplement states that she submitted a complaint to the DFEH "regarding age, race and injury/disability discrimination resulting in wrongful termination and loss of pension benefits." (Supp. to First Am. Compl. at ¶ 11.)  Further, as stated above, the Supplement alleges receipt of some form of "Notice" from the DFEH.  Though the Supplement is unclear as to whether this was a RTS Letter, this Court must make all inferences in favor of the Plaintiffs at this stage in the pleadings.  Thus, Plaintiff Baerresen's claim for disability discrimination is deemed exhausted.  Defendants' Motion to Dismiss Plaintiffs' fourth claim for discrimination is DENIED as it pertains to Plaintiff Baerresen's disability claim.

///
///
///

### ii.  Baerresen's Retaliation Charge

The purpose of exhausting administrative remedies with the EEOC and DFEH is to afford the agency an opportunity to investigate the charge.  <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 644 (9th Cir. 2003).  A district court may address all claims of discrimination that fall within the scope of the agency's actual investigation, or are reasonably expected to grow out of the charge made to either the DFEH or EEOC.  <u>Id.</u>  In determining whether an unexhausted retaliation claim is reasonably related to the exhausted charge, the court may consider the following factors: (1) alleged basis of the discrimination; (2) dates of discriminatory acts specified in the charge; (3) identity of the perpetrators named in the charge; and (4) locations at which discrimination is alleged to have occurred.  <u>Id.</u> (citing <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1100 (9th Cir. 2002)).

Plaintiff Baerresen alleges in the FAC that the only reason for her discharge was retaliation for her disability status (First Am. Compl. at ¶ 24.)  Because she claims that disability was the reason for Defendants' retaliation, and disability was a claim she properly brought before the DFEH, the alleged basis for the discrimination charge aligns with the alleged basis for the retaliation claim in satisfaction of the first factor.

As to the second factor regarding time frame, Plaintiff Baerresen was terminated in October 2008 and submitted her complaint to the DFEH in September 2009.
///

In <u>Vasquez</u>, the court dismissed the plaintiff's argument that his unexhausted retaliation claim would have been encompassed in the original EEOC charge because the retaliation occurred two months after the EEOC charge was filed.  349 F.3d at 645.  The court reasoned that the retaliation did not occur within the time frame of the events alleged in the EEOC charge, and the EEOC could not have investigated an incident that had not yet occurred at the time of investigation.  <u>Id.</u>  Conversely, in the instant case, Plaintiff Baerresen filed the EEOC charge for disability discrimination well after she was terminated, and so the termination itself was included within the time frame EEOC would have investigated.  The time frames underlying the exhausted disability charge and the unexhausted retaliation claim are one and the same satisfying the second factor.

Plaintiff Baerresen further alleges that her managers and supervisors were responsible for both the disability discrimination and the retaliation.  These individuals performed the withholding of disability accommodation, denial of disability leave, and the resulting retaliation (First Am. Compl. at ¶ 49.) Consequently, the perpetrators are the same throughout, and the third factor is met as well.

Finally, the fourth factor is also met as it appears from the FAC that all allegedly discriminatory and retaliatory acts occurred on the premises of Kaiser Morse.  Defendants' Motion to Dismiss Plaintiffs' fourth claim for retaliation is DENIED as it pertains to Plaintiff Baerresen.

///

///

1 **4.   Violation of Public Policy**

2

3        Defendants state that a claim of wrongful termination in

4 violation of public policy must be based on a specific statute or

5 regulation.  Defendants argue that Plaintiffs have not satisfied

6 that prerequisite, and instead have only vaguely referenced a

7 litany of statutes and regulations placing this Court and

8 Defendants "in the position of having to guess at the nature of

9 the public policies involved."

10       An employer may not terminate employment for a reason that

11 contravenes fundamental public policy grounded in a specific

12 constitutional or statutory provision.  <u>Colores v. Board of</u>

13 <u>Trustees</u>, 105 Cal. App. 4th 1293, 1306 (2003) (citing <u>Turner v.</u>

14 <u>Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238, 1252 (1994)).  To sustain

15 a wrongful termination claim in violation of public policy, the

16 plaintiff must establish that the dismissal violated a policy

17 that is: (1) fundamental; (2) beneficial for the public; and

18 (3) embodied in a statute or constitutional provision.  <u>Id.</u> at

19 1307. Vague charges "largely unaccompanied by citations to

20 specific statutory or constitutional provisions, puts

21 [Defendants] and the court in the position of having to guess at

22 the nature of the public policies involved, if any."  <u>Turner</u>, 7

23 Cal. 4th at 1257.

24 ///

25 ///

26 ///

27 ///

28 ///

1    "The broad goal of the FEHA is set forth at [Government

2   Code] section 12920, which states in pertinent part: 'It is

3   hereby declared as the public policy of this state that it is

4   necessary to protect and safeguard the right and opportunity of

5   all persons to seek, obtain, and hold employment without

6   discrimination or abridgement on account of race, religious

7   creed, color, national origin, ancestry, physical handicap,

8   medical condition, marital status, sex or age.'" Stevenson v.

9   Superior Court, 16 Cal. 4th 880, 891 (1997) (citing Rojo v.

10  Kliger, 52 Cal. 3d 65, 72-73 (1990)).

11      Plaintiffs' fifth claim for violation of public policy is

12  vague not only in reference to the statutory provisions that give

13  rise to their claim, but also vague as to the specific public

14  policies they allege were violated.  Plaintiffs' only clear

15  statement of a public policy alleged to have been violated is one

16  that opposes an employer "inventing derogatory information" and

17  placing it in an employee's personnel record (First Am. Compl. at

18  ¶ 56.)  Any other public policy violations asserted in the fifth

19  claim, however, are more difficult to ascertain.

20      A generous reading of the FAC yields allegations of public

21  policies opposing pretextual assertions, maligning of plaintiffs'

22  professional skills and competence (First Am. Compl. at ¶ 57),

23  and racial discrimination in being denied a promotion (First Am.

24  Compl. at ¶ 58.)  This Court is persuaded that racial

25  discrimination is against the fundamental public policy of FEHA,

26  however, the other two public policy violations alleged in the

27  FAC do not appear to be rooted in specific constitutional or

28  statutory provisions.

Without a clear statement of the public policies that have been violated, and the statutory or constitutional support for those fundamental public policies, this Court must dismiss the claim with leave to amend for further clarification.  Defendants' Motion to Dismiss Plaintiffs' fifth claim for wrongful termination in violation of public policy is GRANTED.

### 5.   Intentional Infliction of Emotional Distress

Defendants assert in their motion to dismiss that Plaintiffs' allegations of intentional infliction of emotional distress ("IIED") are mere trivialities and indignities that cannot form the basis of an IIED claim.

The elements for an IIED claim are as follows: (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991) (citing Davidson v. City of Westminister, 32 Cal. 3d 197, 209 (1982)).

"An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency."  Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 80 (1996).

///

///

///

23

"[T]here can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances." Yurick v. Superior Court, 209 Cal. App. 3d 1116, 1128 (1989) (internal citations omitted).  Even where improper motivations underlie personnel management decisions, the remedy is not intentional infliction of emotional distress, but a suit against the employer for discrimination. Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 80 (1996).

Plaintiffs have alleged harmful acts such as misrepresenting facts in Plaintiffs' performance reviews, maligning their professional skills and competence, depriving them of favorable references, and creating dishonest write-ups. However, Plaintiffs cite to no authority that elevates these incidents above mere indignities.  While this Court acknowledges the alleged actions are not trivial to Plaintiffs, even when viewed in light of the totality of the circumstances, they do not meet the bar for an IIED claim.  Plaintiffs' allegations amount to indignities, insults, and perhaps abuse, but none of these injuries are sufficient to recover under a claim for IIED.  Defendants' Motion to Dismiss Plaintiffs' sixth claim for IIED is GRANTED.

### 6.   Breach of Contract

Defendants argue that Plaintiffs merely recite basic elements of a cause of action for breach of contract supported by conclusory statements, which, they allege, does not meet the pleading standard of Rule 8.

1    Rule 8(a)(2) requires that a plaintiff provide a "short and
2    plain statement of the claim showing that the pleader is entitled
3    to relief."  Although a legal conclusion can provide the
4    framework of a complaint, it must be supported by factual
5    allegations.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  A
6    complaint must contain non-conclusory factual allegations that
7    "plausibly give rise to an entitlement to relief."  Id. at 1950.
8    While a claim for breach of contract need not allege specific
9    terms of the contract, allegations of an existence of a written
10   contract, performance under the contract, breach of contract,
11   causation, and damages is sufficient to meet the federal notice
12   pleading standards.  Willson v. Bank of America, N.A., No. 04-
13   1465, 2004 WL 1811148, at *4 (N.D. Cal. August 12, 2004) (citing
14   Westways World Travel v. AMR Corp., 182 F. Supp. 2d 952, 963
15   (C.D. Cal. 2001).

16

17                    **i.  Defendant Kaiser**

18

19   Plaintiffs' claim for breach of contract alleges the basic
20   facts surrounding the contract.  They allege the existence of a
21   written and oral employment contract with Defendant Kaiser for
22   compensation, that Plaintiffs had performed on the contract
23   through their employment, that Defendant Kaiser breached by
24   acting in bad faith in Plaintiffs' terminations, and state
25   damages that resulted from this breach.  Plaintiffs allege
26   sufficient factual allegations to establish a plausible basis for
27   entitlement to relief.
28   ///

Plaintiffs need not prove each of the elements at this stage, but need only show that the claim is plausible from the facts alleged in the complaint.  Defendants' Motion to Dismiss Plaintiffs' seventh claim for breach of contract as it pertains to Defendant Kaiser is DENIED.

## ii.  Individual Defendants

Plaintiffs' claim for breach of contract against the individual Defendants, however, cannot stand.  Though sufficient facts were alleged to show an employment contract plausibly existed with Defendant Kaiser, the same is not true for the individual Defendants.  Not only have Plaintiffs not alleged existence of a contract with the individual Plaintiffs, such a claim, based on the facts as pled in the FAC, is not plausible.  Only in special circumstances would an employment contract exist between employees and supervisors or managers as well as with the employer.  If this is the case, Plaintiffs must plead more clearly that a contract in fact existed with each of the individual Defendants.  Defendants' Motion to Dismiss Plaintiffs' seventh claim for breach of contract as it pertains to each of the individual Defendants is GRANTED.

///
///
///
///
///
///

26

1

2

**B.    Motion to Strike**

3        Defendants move to strike three allegedly improper

4   references in Plaintiffs' FAC: (1) impertinent statements

5   regarding allegations that can be addressed only by the National

6   Labor Relations Board under the National Labor Relations Act;

7   (2) improper reference to "Kaiser Roseville" as it has no

8   essential relationship to Plaintiffs' claims for relief; and

9   (3) immaterial reference to inadmissible decision of the

10  California Unemployment Insurance Appeals Board awarding

11  Plaintiff Scribner benefits.

12       Rule 12(f) motions are generally viewed with disfavor and

13  not ordinarily granted because they are often used to delay and

14  because of the limited importance of the pleadings in federal

15  practice. Walters v. Fidelity Mortg. of CA, 730 F. Supp. 2d

16  1185, 1196 (E.D. Cal. 2010). (citing Bureerong v. Uvawas, 922 F.

17  Supp. 1450, 1478 (C.D. Cal. 1996)). Accordingly, courts often

18  require a showing of prejudice by the moving party. S.E.C. v.

19  Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). Prejudice can

20  arise from allegations that cause delay or confusion of the

21  issues. Fantasy, Inc., 984 F.2d at 1528. A motion to strike

22  should not be granted unless it is absolutely clear that the

23  matter to be stricken could have no possible bearing on the

24  litigation. Walters, 730 F. Supp. 2d at 1196 (citing Lilley v.

25  Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996)). The function

26  of a Rule 12(f) motion is to avoid time and expense of litigating

27  spurious issues. Fantasy, Inc., 984 F.2d at 1527.

28  ///

1          **1.   National Labor Relations Board Claims**

2

3     Defendants contend that the FAC improperly alleges factual
4  allegations that can only be addressed by the National Labor
5  Relations Board ("Board") under the National Labor Relations Act
6  ("NLRA").  The portion of the FAC Defendants refer to alleges in
7  paragraph 16 that each of the Plaintiffs experienced
8  discrimination and retaliation because they were "attempting to
9  coordinate their protests and criticisms."  Defendants argue that
10 federal courts do not have jurisdiction to address such
11 allegations.

12    By conferring upon the Board the powers to interpret and
13 enforce the Labor Management Relations Act (the NLRA as amended),
14 Congress necessarily implied that potentially conflicting 'rules
15 of law, of remedy, and of administration' cannot be permitted to
16 operate.  <u>Berlault v. Local 40, Super Cargoes and Checkers of</u>
17 <u>Intern. Longshoremen's and Warehousemen's Union</u>, 501 F.2d 258,
18 260-61 (9th Cir. 1974) (<u>citing</u> <u>San Diego Building Trades Council</u>
19 <u>v. Garmon</u>, 359 U.S. 236, 242 (1959)).  This doctrine of
20 preemption in labor relations prohibits both state and federal
21 courts from exercising jurisdiction over suits directly involving
22 activity arguably subject to labor management relations or fair
23 labor standards.  <u>Id.</u> at 260 (internal citations omitted).  A
24 conversation may constitute a "concerted activity" within the
25 meaning of the NLRA, and accordingly subject to the Board's
26 exclusive jurisdiction, if it appears that those involved were
27 engaged with the object of initiating or inducing group action in
28 the interest of the employees.

1  Signal Oil & Gas Co. v. N.L.R.B., 390 F.2d 338, 342-43 (9th Cir.
2  1968).

3       Though the reference Defendants wish to strike is not a
4  cause of action for this Court to adjudicate, the statement runs
5  close enough to activities that are arguably within the meaning
6  of the NLRA to be preempted by the Board.  In attempting to
7  coordinate their protests and criticisms, Plaintiffs were
8  inducing group action in the interests of the employees.
9  Further, the reference may cause prejudice to Defendants by
10 confusing the issues at hand with the insinuation of an
11 additional labor relations issue.  When weighed against the
12 minimal support this statement offers Plaintiffs' case, the
13 possible confusion it could cause tips the balance in favor of
14 granting Defendants' motion.  Thus, this Court strikes the
15 reference to Defendants' discrimination and retaliation for
16 Plaintiffs' coordination of protests and criticisms.  Defendants'
17 Motion to Strike the first reference is GRANTED.

18

19              **2.   Kaiser Roseville**

20

21      Defendants further wish to strike as impertinent Plaintiffs'
22 reference to Kaiser Roseville in their FAC arguing the facility
23 has no essential or important relationship to Plaintiffs' claims
24 for relief.  The statement to which Defendants refer makes
25 mention of Kaiser Roseville terminating a number of discharge
26 planners and senior nurses simultaneously alongside Kaiser Morse
27 and Kaiser South.  Plaintiffs allege that as a result, re-
28 employment options were unnecessarily limited.

1    A matter that is impertinent "consists of statements that do

2  not pertain, and are not necessary, to the issues in question,"

3  Fantasy, 984 F.2d at 1527.  None of the Plaintiffs were employed

4  by Kaiser Roseville.  They assert that the reason for mentioning

5  this branch of Defendant Kaiser is to support their claim that

6  each Plaintiff had a more difficult time obtaining new employment

7  because so many similarly qualified nurses were terminated at the

8  same time.  Though not essential to Plaintiffs' claims, the

9  reference is not impertinent.  This Court is satisfied that the

10  reference does pertain to the issues in question, and may provide

11  further support for injuries allegedly suffered from Defendants'

12  actions.  Defendants' Motion to Strike the second reference is

13  DENIED.

14

15          **3.   California Unemployment Insurance Appeals Board**
                    **Decision**

16

17    Defendants contend that the FAC contains an improper

18  allegation that the California Unemployment Insurance Appeals

19  Board awarded Plaintiff Scribner benefits.  Defendants argue that

20  the decision is immaterial and inadmissible under California law.

21    To succeed on a 12(f) motion, the moving party must

22  establish that there are no questions of fact and that no

23  questions of law are in dispute.  S.E.C., 902 F. Supp. at 1165

24  (internal citations omitted).  Defendants' motion to strike this

25  third reference requires a deeper analysis of a question of law

26  than is appropriate for a 12(f) motion.

27  ///

28  ///

30

To support their argument, Defendants rely on Cal. Unemp. Ins. Code § 1960, which precludes use of any finding of fact or conclusion from the California Unemployment Insurance Appeals Board in any proceeding before a judge.  Before striking Plaintiffs' reference, this Court would first have to decide whether Cal. Unemp. Ins. Code § 1960 is applicable in federal court in light of the Erie Doctrine as it may be considered a procedural matter.  Such a determination is a greater task than a 12(f) motion to strike asks of the court.  Defendants have not shown that no questions of fact or law are in dispute in moving to strike this reference to a California Unemployment Insurance Appeals Board decision.  Defendants' Motion to Strike the third reference is DENIED.

**CONCLUSION**

For the reasons stated above, Defendants' 12(b)(6) Motion to Dismiss (ECF No. 36) is GRANTED with leave to amend as to claims Five and Six, and Seven against the individual Defendants only, GRANTED without leave to amend as to claim One against the individual Defendants only, and DENIED as to claims Two and Four, and Seven pertaining to Defendant Kaiser only.

///
///
///
///
///
///

1    Defendants' 12(f) Motion to Strike (ECF No. 37) is GRANTED

2   with leave to amend as to the first reference, and DENIED as to

3   the second and third references.[5]

4        IT IS SO ORDERED.

5
    Dated: March 31, 2011
6

7                                    _____

8                                    MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27        [5] Because oral argument will not be of material assistance,
    the Court ordered this matter submitted on the briefs.  E.D. Cal.
28   Local Rule 230(g).

                                     32