UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROCHELLE WYNES,

            Plaintiff,

    v.

KAISER PERMANENTE HOSPITALS, et al.,

            Defendants.

No.  2:10-cv-00702-MCE-GGH

**MEMORANDUM AND ORDER**

       This case arises out of the termination of Plaintiff Rochelle Wynes[1] ("Plaintiff" or "Wynes") by her former employer, Kaiser Foundation Hospitals[2] ("Kaiser").

///

///

///

///

///

---

[1] Although this case was initiated by four plaintiffs, (see ECF No. 1), only Plaintiff Wynes remains in this action as a result of the parties' stipulation to dismiss the other three plaintiffs.

[2] Kaiser Foundation Hospitals was erroneously sued as Kaiser Permanente Hospitals and Kaiser Foundation, Inc.  The parties agree that the entity that employed Plaintiff was Kaiser Foundation Hospitals. (Defs.' Reply to Pl.'s Separate Statement of Undisputed Facts ("SUF"), ECF No. 108, ¶ 3.)

1

1   The operative Second Amended Complaint ("SAC") alleges the following causes of

2   action against Kaiser: (1) wrongful termination in violation of the Age Discrimination in

3   Employment Act ("ADEA"); (2) violation of Americans with Disabilities Act ("ADA");

4   (3) discrimination and retaliation in violation of federal and state law and public policy;

5   (4) wrongful termination in violation of public policy; (6) breach of contract; and

6   (7) violation of ERISA.  (ECF No. 48.)  The SAC also contains a cause of action for

7   intentional infliction of emotional distress against several Kaiser management

8   employees.  (Id.)  On June 19, 2012, Defendants Kaiser, Ruby Gartrell, Luann LaMay

9   and Henry Amos ("Defendants") filed their Amended Answer and Counterclaim to the

10   SAC.  (ECF No. 70.)  Presently before the Court is Defendants' Motion for Summary

11   Judgment as to each of Plaintiff's causes of action.  (ECF Nos. 71, 75.)  Defendants'

12   Motion does not address their counterclaim.  For the reasons that follow, Defendants'

13   Motion will be granted in part and denied in part.[3]

14

15                                    **BACKGROUND**[4]

16

17        Plaintiff is an African-American registered nurse who started working at Kaiser

18   Medical Center on Morse Avenue in Sacramento ("Kaiser-Morse") in 1982.  In 1993,

19   Plaintiff transferred into the position of Patient Care Coordinator ("PCC") in the Continuity

20   of Care Department at Kaiser-Morse.  Plaintiff's employment was at-will.  Plaintiff worked

21   as a PCC at Kaiser-Morse until her employment was terminated by Kaiser effective on

22   March 18, 2009.  Plaintiff was 52 years old at the time of her termination.

23        Plaintiff suffered a shoulder injury in 1998 and was out of the workplace for a

24   period of time.  She had additional surgeries in June of 2003 and then January 2005.

25   _____

26        [3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

27        [4] Unless otherwise noted, the facts herein are undisputed.  (See SUF, ECF No. 108.)  Where the facts are disputed, the Court recounts Plaintiff's version of the facts.

28

1   After taking a leave of absence, she returned to work with physical restrictions from her

2   physician.  According to Plaintiff, her physical disability was exacerbated by hostile work

3   environment she experienced at Kaiser-Morse.  Plaintiff has described her physical

4   disability as follows: "I suffer from an impairment that substantially limits me in the

5   following manner: I cannot stand, sit (for long periods), bend, lift or carry heavy objects,

6   raise [m]y right arm, etc."  (Wynes Decl., ECF No. 94 ¶ 51.)

7        In 2000,[5] Plaintiff complained to Kaiser management about inadequate patient

8   treatment.  According to Plaintiff's declaration, she refused to participate in an unsafe

9   discharge of a patient because the patient was not stable for discharge per the McMillian

10  Robertson guidelines used by Kaiser to determine a patient's readiness for discharge.

11  (Id. ¶ 4D.)  After Plaintiff advised the Skilled Facility Placement Department at Kaiser of

12  the patient's continued elevated blood pressure, an unidentified Kaiser doctor became

13  upset that Plaintiff "conveyed the information and declined to participate in the unsafe

14  discharge."  (Id.)  Plaintiff notified Kaiser Human Recourses of the problem.  (Id.)

15       In 2007, Plaintiff informed her supervisor Luann LaMay that she would retire on

16  June 30, 2007, in response to which LaMay sent a congratulatory email to Plaintiff.

17  (ECF Nos. 94-3, 94-4.)  However, Plaintiff subsequently changed her mind and informed

18  LaMay that she would not retire.  (Wynes Decl., ECF No. 94 ¶ 4A.)  According to

19  Plaintiff, LaMay physically assaulted Plaintiff trying to force her to retire.  (Id.)  More

20  specifically, LaMay "grabbed [Plaintiff's] wrist . . .  and dragged [her] out of the unit" "like

21  a rag doll."  (Id.; ECF No. 111 at 1.)  Plaintiff reported the incident both to Kaiser

22  management and to the Sacramento Sheriff's Department.  (Wynes Decl., ECF No. 94

23  ¶ 4B.)  As a result of that incident and Kaiser's alleged failure to take appropriate

24  measures against LaMay, Plaintiff became physically ill.

25  ///

26  
_____

27       [5] It is not clear whether the described incident occurred in 2000 or 2001.  In her deposition,
    Plaintiff stated that she made the complaint on March 3, 2001 (see Wynes Dep. at 177:16-180:25,
    attached as Ex. 1 to Petty Decl., ECF No. 73); however, Plaintiff's Declaration indicates that the incident at

28  issue occurred in 2000 (see Wynes Decl., ECF No. 94 ¶ 4D).

1    On July 4, 2007, after refusing to retire, Plaintiff was summarily reassigned to a

2    new work station.  She was also given several letters of warning, which Plaintiff claims

3    were undeserved, was denied promotions and provided the least desirable assignments.

4    From February 15, 2008 until February 2, 2009, Plaintiff was on a medical leave

5    of absence, which was allegedly caused by Kaiser's harassment of Plaintiff.  In March

6    2008, all PCCs at Kaiser-Morse received salary increases except for Plaintiff.  After the

7    first six months of Plaintiff's leave, on September 11, 2008, Kaiser disability consultant

8    Jeniece Thomas sent Plaintiff a letter telling her that her entitlement to a leave had

9    expired but that Kaiser had determined it to be reasonable to accommodate her

10   continuing disability by extending her leave through November 1, 2008, the date

11   Plaintiff's doctor anticipated she could return.  On October 27, 2008, Plaintiff's physician

12   provided medical certification of Plaintiff's continuing disability for another month.  On

13   November 18, 2008, Plaintiff's physician again provided documentation of Plaintiff's

14   continuing disability, with a description of the sort of restrictions he anticipated Plaintiff

15   would require upon her return.  On December 15, 2008, Thomas sent a letter to Plaintiff

16   acknowledging receipt of her physician's documentation and extending Plaintiff's leave

17   of absence through January 2, 2009.  On December 31, 2008, Kaiser granted Plaintiff a

18   further leave of absence through February 1, 1009.

19   Plaintiff returned to work as a PCC at Kaiser-Morse on February 2, 2009, with a

20   release from her physician that she required a modified work schedule.  On February 2,

21   2009, Continuity of Care Department Director Luann LaMay, Employee and Labor

22   Relations Consultant Henry Amos, and Disability Consultant Jeniece Thomas met with

23   Plaintiff to discuss the accommodation her doctor had described.

24   According to Plaintiff, she was not provided the necessary accommodation for her

25   disability when she returned to work on February 2 and 3, 2009.  In particular, her work

26   station lacked adequate desk area which required Plaintiff to raise her arm in a matter

27   that was "difficult, painful and nearly impossible."  (Wynes Decl., ECF No. 94 ¶ 44.)

28   ///

1   Plaintiff further claims that the physical set-up of the workstation, which Plaintiff had to

2   use during her orientation on February 2, 2009, was such that she "had to stand to see

3   the monitor, but then could not sit to be in a position to write down the pertinent

4   information."  (Id. ¶ 50.)  Plaintiff expressed her concerns regarding the inadequate work

5   station set-up to her supervisors.  In response to Plaintiff's complaint, Defendant Ruby

6   Gartrell advised Plaintiff to stand to take notes or "just write holding a tablet."  (Id.; ECF

7   No. 95-4 Ex. J; ECF No. 95-8.)  Plaintiff claims that requiring her to stand up while taking

8   notes was "not an option" in light of her disability, and that she "could not handle the pain

9   it caused." (Wynes Decl., ECF No. 94 ¶ 50; ECF No. 95-4 Ex. J.)  According to Plaintiff,

10  the unaccommodating physical set-up caused her back pain which resulted in her

11  inability to return to work on February 4, 2009.

12          After working on February 2 and 3, 2009, Plaintiff did not report for work on

13  February 4, 2009, and left a telephone message for Ruby Gartrell, stating that her back

14  was "grieving" her and that she was unable to work.  (SUF 14.)  On February 9, 2009,

15  Thomas sent a letter to Plaintiff stating, inter alia, that Kaiser as "able to accommodate

16  [Plaintiff's] current work restrictions" so Plaintiff should return to work.  On February 18,

17  2009, Plaintiff's physician informed Kaiser that Plaintiff was unable to work at Kaiser "in

18  any capacity" and that there was no anticipated date by which she would be able to

19  return to Kaiser-Morse.  (ECF No. 111 at 4.)  However, the physician's report also stated

20  that Plaintiff "[c]an work as discharge planning nurse for another hospital."  (Id.)

21          On March 17, 2009, Thomas sent a letter to Plaintiff informing her of the

22  termination of her employment effective March 18, 2009.  Thomas stated that "given that

23  it is not reasonable to accommodate a leave of absence indefinitely, the history of

24  accommodation efforts thus far and due to the operational needs of the department, it is

25  no longer reasonable to accommodate the requested extension of your leave."

26  (SUF 17.)  Kaiser terminated Plaintiff's employment effective March 18, 2009.

27          From 2004 through 2009, several PCCs over the age of 50 were either terminated

28  or retired from Kaiser-Morse, while no PCC under the age of 40 was terminated.

1    (ECF No. 102 at 3.)  According to Plaintiff, she was one of the senior PCCs who were

2    wrongfully terminated at that time because of age, disability, race or some other

3    discriminatory reason.

4

5                                **DEFENDANTS' REQUEST TO STRIKE**

6

7            On January 30, 2012, the Court issued an Order striking Plaintiff's memorandum

8    of points and authorities filed in support of her opposition to Defendants' motion for

9    summary judgment for failure to comply with the Court's scheduling order.  (ECF

10   No. 109.)  As explained in the January 30, 2012 Order, Plaintiff previously filed a

11   39-page memorandum, which was almost double the page limit set by the Court's

12   scheduling order.[6]  (Id.)  The Court specifically instructed Plaintiff to file an amended

13   memorandum not exceeding twenty pages.  On February 14, 2013, Plaintiff filed an

14   amended memorandum in opposition to Defendants' summary judgment motion.  (ECF

15   No. 110.)  Plaintiff's amended 20-page memorandum complies with the page limit

16   requirement.  However, Plaintiff additionally filed an eight page memorandum entitled

17   "Analysis of Retaliation and Mixed Motivation Issues."  (ECF No. 110-1.)  The Court's

18   review of that document revealed that it contains nothing but Plaintiff's legal arguments

19   in opposition to Defendants' motion for summary judgment.  In fact, Plaintiffs' additional

20   memorandum is a virtual cut and paste from pages 33-38 of Plaintiff's previous

21   opposition filing (see ECF No. 103), which the Court ordered stricken.  It is clear to the

22   Court that Plaintiff again attempts to circumvent the page limitation established by the

23   Court's scheduling order and emphasized in the January 30, 2013 Order.  Accordingly,

24   the Court strikes the document entitled "Analysis of Retaliation and Mixed Motivation

25   Issues."  (ECF No. 110-1.)  Plaintiff is hereby warned that her continued non-compliance

26   with the Court's orders can and will lead to sanctions.

27   _____

28          [6] Pursuant to the Court's operative scheduling order, Plaintiff's opposition is not to exceed twenty
     (20) pages.  (ECF No. 60 at 5.)

                                                    6

1

**SUMMARY JUDGEMENT STANDARD**

2

3          Summary judgment is appropriate when it is demonstrated that there exists no

4    genuine issue as to any material fact, and that the moving party is entitled to judgment

5    as a matter of law.  Fed. R. Civ. P. 56(a); Karuk Tribe of Cal. v. U.S. Forest Serv.,

6    681 F.3d 1006, 1017 (9th Cir. 2012).  Summary judgment should be entered "against a

7    party who fails to make a showing sufficient to establish the existence of an element

8    essential to that party's case, and on which that party will bear the burden of proof at

9    trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[W]here the nonmoving party

10   will bear the burden of proof at trial on a dispositive issue, a summary judgment motion

11   may properly be made in reliance solely on the 'pleadings, depositions, answers to

12   interrogatories, and admissions on file.'" Id. at 324.

13         The Supreme Court explained:

14                [T]he party seeking summary judgment always bears the
                  initial responsibility of informing the district court of the basis
15                of its motion, and identifying those portions of "the pleadings,
                  depositions, answers to interrogatories, and admissions on
16                file together with the affidavits, if any," which it believes
                  demonstrate the absence of a genuine issue of material fact.
17

18   Id. at 323.  In attempting to establish the existence of a factual dispute, the opposing

19   party must tender evidence of specific facts in the form of affidavits, and/or admissible

20   discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

21   56(e).  The opposing party must demonstrate that the fact in contention is material, i.e.,

22   a fact that might affect the outcome of the suit under the governing law, and that the

23   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

24   for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

25   (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347,

26   355 (9th Cir. 1987).

27   ///

28   ///

7

1    Stated another way, "before the evidence is left to the jury, there is a preliminary

2    question for the judge, not whether there is literally no evidence, but whether there is any

3    upon which a jury could properly proceed to find a verdict for the party producing it, upon

4    whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement

5    Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court explained,

> [w]hen the moving party has carried its burden under Rule
> 56(c), its opponent must do more than simply show that there
> is some metaphysical doubt as to the material facts.  . . .
> Where the record taken as a whole could not lead a rational
> trier of fact to find for the nonmoving party, there is no
> "genuine issue for trial."

10   Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)

11   (internal citations omitted).

12        In resolving a summary judgment motion, the evidence of the opposing party is to

13   be believed, and all reasonable inferences that may be drawn from the facts placed

14   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

15   255.  However, "inferences are not drawn out of the air, and it is the opposing party's

16   obligation to produce a factual predicate from which the inference may be drawn."

17   County of Inyo v. Dep't of Interior, 873 F. Supp. 2d 1232, 1239 (E.D. Cal. 2012).

18

19                                    **ANALYSIS**

20

21        Plaintiff alleges that Kaiser discriminated against her on the basis of age, disability

22   and race, and also took retaliatory actions against her for making complaints about

23   patient care.  Defendants seek summary judgment in its favor on each of the causes of

24   action alleged in the SAC arguing that the undisputed facts demonstrate that Kaiser

25   never engaged in the alleged discriminatory or retaliatory conduct.[7]

26   _____

27        [7] While Defendants do not specifically ask for partial summary judgment or summary adjudication,
     the Court has discretion to adjudicate individual claims when it believes the criteria for summary
     adjudication are met.  See Jones v. Dollar Tree Stores, Inc., 2006 WL 1408667, at *1 n.1 (E.D. Cal.
28   May 19, 2006.)

1

2

**A.    First Cause of Action: Wrongful Termination in Violation of ADEA**

Plaintiff alleges that Kaiser violated the ADEA, 29 U.S.C. §621-634, by terminating her employment due to age.  (SAC ¶¶ 21-24.)  According to the SAC, Kaiser had a plan to terminate older PCCs and, in order to carry that plan out, Kaiser "commenced a course of conduct designed to appear to justify the intended termination." (Id. ¶¶ 23-24.)  In particular, according to the SAC, Kaiser "began to fabricate allegations of [Plaintiff's] poor performance" and "created contrived disciplinary write-ups" with the goal of ultimately terminating Plaintiff and other senior nurses.  (Id. ¶ 24.)

Under ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. § 623(a)(1).  This prohibition is "limited to individuals who are at least 40 years of age." Id. § 631(a).

To prevail on a claim for age discrimination under the ADEA at trial, a plaintiff must demonstrate that her age was the "but-for" cause of the employer's adverse action. Gross v. FBL Fin. Serv., 557 U.S. 167, 176 (2009).  In Gross, the Supreme Court explained that, "[u]nlike Title VII, . . . the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  Id. at 167-68.  However, the Ninth Circuit recently explained that the Gross rule applies only to a plaintiff's burden at trial, and not at the summary judgment stage.  Shelley v. Geren, 666 F.3d 599, 607-608 (9th Cir. 2012).  Standards of proof under Title VII of the 1964 Civil Rights Act ("Title VII") remain controlling at the summary judgment stage of lawsuits alleging ADEA violations.  Id.

As with claims brought under Title VII, ADEA claims use the burden-shifting framework articulated by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Ritter v. Hughes Aircraft Co., 58 F.3d 454 (9th Cir. 1995). ///

9

1   "Under that framework, the burden of production first falls on the plaintiff to make out a

2   prima facie case of discrimination."  Coghlan v. Am. Seafoods Co., LLC, 413 F.3d 1090,

3   1094 (9th Cir.2005).  To establish a prima facie case of age discrimination under the

4   ADEA, plaintiff must show that she was: "(1) at least forty years old, (2) performing [her]

5   job satisfactorily, (3) discharged, and (4) either replaced by substantially younger

6   employees with equal or inferior qualifications or discharged under circumstances

7   otherwise 'giving rise to an inference of age discrimination.'"  Diaz v. Eagle Produce,

8   Ltd., 521 F.3d 1201, 1207 (9th Cir.2008) (citation omitted).  An employee can satisfy the

9   last requirement by presenting "circumstantial, statistical or direct evidence that the

10   discharge occurred under circumstances giving rise to an inference of age

11   discrimination."  Wallis v. J.R. Simplot, Co., 26 F.3d 885, 891 (9th Cir.1994); see also

12   Diaz, 521 F.3d at 1211 ("[W]e treat the last element of the prima facie case with

13   'flexibility'.").  For example, "[a]n inference of discrimination can be established by

14   showing the employer had a continuing need for the employees' skills and services in

15   that their various duties were still being performed . . . or by showing that others not in

16   their protected class were treated more favorably."  Diaz, 521 F.3d at 1207-08 (internal

17   citations and quotation marks omitted).  The requisite degree of proof necessary to

18   establish a prima facie case of age discrimination under the ADEA "is minimal and does

19   not even need to rise to the level of a preponderance of the evidence."  Coghlan,

20   413 F.3d at 1094.

21       If the plaintiff establishes a prima facie case of disparate treatment, the burden

22   shifts to the defendant "to articulate a legitimate nondiscriminatory reason for its

23   employment decision."  Wallis, 26 F.3d at 889.  If the defendant does so, the plaintiff

24   then "must demonstrate that the employer's alleged reason for the adverse employment

25   decision is a pretext for another motive which is discriminatory."  Id.

26   ///

27   ///

28   ///

10

1   The plaintiff can do it in one of two ways: "(1) indirectly, by showing that the employer's

2   proffered explanation is unworthy of credence because it is internally inconsistent or

3   otherwise not believable, or (2) directly, by showing that unlawful discrimination more

4   likely motivated the employer." Chuang v. Univ. of Cal. Davis Bd. Of Trustees, 225 F.3d

5   1115, 1127 (9th Cir. 2000) (internal quotation marks omitted). "All of the evidence—

6   whether direct or indirect—is to be considered cumulatively." Shelley, 666 F.3d at 609.

7          The factual inquiry regarding pretext requires a heightened level of specificity; the

8   plaintiff must produce "specific and substantial" evidence that the defendant's reasons

9   are really a pretext for discrimination. Aargon v. Republic Silver State Disposal, Inc.,

10   292 F.3d 654, 661 (9th Cir. 2002). "[W]here the prima facie case consists of no more

11   than the minimum necessary to create a presumption of discrimination . . . plaintiff has

12   failed to raise a triable issue of fact." Wallis, 26 F.3d at 890. Thus, the plaintiff must do

13   more than simply "establish a prima facie case and deny the credibility of [defendant's]

14   witnesses." Id. However, when the "evidence, direct or circumstantial, consists of more

15   than the prima facie presumption, a factual question will almost always exist with respect

16   to any claim of nondiscriminatory reason." Id.

17          The parties agree that Plaintiff has satisfied the first and third elements of the

18   prima facie case. Defendants, however, argue that Plaintiff has failed to establish the

19   remaining elements because (1) Plaintiff was not performing her job satisfactorily at the

20   time of her termination; and (2) there is no evidence that Kaiser would not have

21   terminated Plaintiff but for her age. (ECF No. 71 at 12.)

22          According to Defendants, Plaintiff was not performing her job satisfactorily at the

23   time of her termination because she was not able to work at all due to a back condition,

24   and her doctor could not predict when Plaintiff would be able to return to work. (Id.)

25   Thus, Defendants essentially argue that the Court's inquiry here should be limited to the

26   time period immediately preceding Plaintiff's termination. The Court disagrees.

27   ///

28   ///

1   As alleged in the SAC and clarified in Plaintiff's opposition to Defendant's motion for

2   summary judgment, Plaintiff argues that her termination was the culmination of Kaiser's

3   "policy" of disparate treatment of Plaintiff and other senior nurses.  Plaintiff has

4   presented sufficient evidence[8] to suggest that her medical leave of absence was caused,

5   at least in part, by the disparate treatment she experienced at work which was allegedly

6   designed to force Plaintiff's retirement.  (See ECF No 110 at 5; Wynes Decl., ECF

7   No. 94 ¶ 16).  The Court finds that it would be proper, under the circumstances of this

8   case, to expand its inquiry with respect to quality of Plaintiff's work performance to the

9   period before the allegedly disparate treatment started to account for the possibility that,

10  as asserted by Plaintiff, the situation changed "once [Plaintiff] was included among those

11  targeted for removal through forced retirement or contrived or excuseless termination."

12  (ECF No. 110 at 9.)

13          In her Declaration, Plaintiff states that the discriminatory treatment by her

14  supervisors, including negative employment reviews and false write-ups, were an

15  integral part of Kaiser's plan to terminate or force retirement of senior nurses.  (Wynes

16  Decl. ECF No. 94 ¶ 9.)  According to Plaintiff, prior to her 2008-2009 medical leave of

17  absence, she had performed her job satisfactorily and was receiving excellent employee

18  reviews and evaluations.  (Id. ¶ 29 & Ex. K.)  Plaintiff further states that, when she

19  returned to work on February 2, 2009, she "was willing and able to work, and could have

20  done so with reasonable accommodation as to my continuing medical problems and a

21  cessation of the harassing conduct."  (Id. ¶ 11.)  A report of Plaintiff's treating physician,

22  dated July 7, 2009, also indicates that Plaintiff "can work as discharge planning nurse for

23  another hospital," but not at Kaiser.  (ECF No. 111 at 4.)

24  ///

---

25          [8] Defendants object to much of Plaintiff's evidence.  (ECF No. 107.)  Plaintiff also filed evidentiary
    objections to Defendants' evidence.  (ECF No. 106.)  As more fully analyzed below, the Court finds that
26  there is sufficient admissible evidence or evidence that can be presented in admissible form at trial to
    defeat summary judgment on Plaintiff's ADEA claim, ADA claim and claim for wrongful termination in
27  violation of public policy.  See Fed. R. Civ. P. 56.  Accordingly, the Court does not address each
    evidentiary objection raised by the parties.  The parties may renew their objections at trial.

28

1    Defendant, while arguing that Plaintiff's prolonged absence defeats any inference

2  of Plaintiff's satisfactory performance, does not dispute that Plaintiff's performance prior

3  to her medical leave of absence or during the two days that Plaintiff was working in

4  February 2 and 3, 2009, was satisfactory.  Taking into consideration that Plaintiff's

5  burden in establishing a prima facie case of disparate treatment is "minimal," see

6  Coghlan, 413 F.3d at 1094, the Court finds that, for the purposes of this motion only,

7  Plaintiff has presented sufficient evidence to demonstrate that she had performed her

8  duties satisfactorily prior to the commencement of Kaiser's allegedly discriminatory

9  practices.

10    The next issue for the Court is whether Plaintiff has shown that she was either

11  replaced by a substantially younger employee with equal or inferior qualifications or

12  discharged under circumstances otherwise giving rise to an inference of age

13  discrimination.  See Diaz, 521 F.3d at 1207.  Plaintiff has not presented any evidence

14  that Kaiser hired a younger individual to perform her duties.  However, she has made a

15  sufficient showing of "circumstances otherwise giving rise to an inference of age

16  discrimination" for the Court to conclude that Plaintiff has carried her initial burden of

17  establishing a prima facie case of such discrimination.  In particular, Kaiser's response to

18  Plaintiff's interrogatories indicates that, from 2004 to 2009, Kaiser terminated several

19  senior nurse patient care coordinators while not terminating any nurse under the age of

20  53.  (See ECF No. 105-2 at 3-4.)  The chart submitted by Kaiser in response to Plaintiff's

21  interrogatory also demonstrates that several nurses between the ages of 61 and 63

22  retired during the same time period.  (Id.)  Further, Plaintiff submitted a declaration of

23  Marsha Scribner, another senior PCC at Kaiser, who stated that she was 64 years old

24  when she was terminated by Kaiser in 2008.  (Scribner Decl., ECF No. 89 ¶¶ 4, 6.)

25  Another senior PCC, Sharyn Sephus, is prepared to testify that Kaiser forced her to

26  retire in April of 2009, after she had worked at Kaiser for 30 years.  (Sephus Decl., ECF

27  No. 99 ¶ 1.)

28  ///

1      The Court finds that Plaintiff has met her initial burden of establishing a prima

2   facie cause of age discrimination under the ADEA.  The burden now shifts to Defendants

3   "to articulate a legitimate nondiscriminatory reason for [Kaiser's] employment decision."

4   See Wallis, 26 F.3d at 889.  Defendants have done so by presenting evidence that

5   Kaiser had a legitimate reason for Plaintiff's termination because Plaintiff was on a

6   medical leave of absence for over a year (except for two days), and her doctor stated

7   that there was no anticipated date for her return.  (ECF No. 71 at 7; SUF 5, 8, 9, 14, 16,

8   17.)

9      Since Defendants presented sufficient evidence of a non-discriminatory reason for

10  Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate that Kaiser's

11  articulated reason is pretextual.  See Wallis, 26 F.3d at 889.  In addition to presenting

12  evidence of what appears to be a pattern of terminations and retirements of senior

13  nurses in 2004-2009, Plaintiff has presented the following evidence.  In or around April

14  2007, Plaintiff informed her supervisor Luan LaMay about her decision to retire.  (ECF

15  Nos. 94-3.)  An email exchange that followed between Plaintiff and LaMay demonstrates

16  that LaMay was pleased when Wynes announced her decision to retire and became

17  disappointed when Wynes changed her mind later.  (See Wynes Decl., ECF No. 94

18  ¶ 4A; ECF Nos. 94-1, 94-2, 94-3, 94-4.)  According to Plaintiff, LaMay refused to

19  approve Plaintiff's bereavement leave unless Plaintiff agreed to retire.  (Wynes Dep. at

20  49:22-50:3.)  Plaintiff's refusal to retire even led to a physical confrontation between

21  Plaintiff and LaMay during which LaMay allegedly dragged Plaintiff down the hall "during

22  a harassing physical and emotional attempt to pressure her to retire."  (See Wynes

23  Decl., ECF No. 94 ¶ 4A; ECF Nos. 94-1, 94-2, 94-3, 94-4; Wynes Dep. at 50: 4-10.)

24  Plaintiff reported the incident both to Kaiser management and to the Sacramento

25  Sheriff's Department.  (Wynes Decl., ECF No. 94 ¶ 4B.)

26      Further, Plaintiff stated in her Declaration that she became subjected to disparate

27  treatment and harassment by her supervisors once she refused to retire.  (Id. ¶ 8.)

28  ///

14

1    In particular, according to Plaintiff, she was summarily reassigned after her refusal to

2    retire and was given undeserved letters of warning.  (Id.)

3         The Ninth Circuit explained that the court must be particularly cautious in deciding

4    whether to grant summary judgment where, as here, issues of the defendant's intent or

5    motivation are involved.  Haydon v. Rand Corp., 605 F.2d 453, 455 n.2 (9th Cir.1979).

6    Viewing the evidence presented by the parties in this case cumulatively and in the light

7    most favorable to Plaintiff, the Court finds that Plaintiff has met her burden of

8    establishing, at the very least, a genuine issue of material fact as to whether Kaiser

9    discriminated against and terminated Plaintiff because of her age.  This is especially true

10   when evidence of Plaintiff's personal experience is viewed in the context of a series of

11   terminations of senior nurses by Kaiser during the relevant time period.  Thus, the Court

12   finds that Plaintiff has presented sufficient evidence of pretext to survive Defendants'

13   summary judgment motion.  See Evanston Ins. Co. v. OEA, Inc., 566 F.3d 915, 919 (9th

14   Cir. 2009) ("We do not weigh the evidence or determine the truth of the matter; instead,

15   we only determine whether there is a genuine issue for trial.").  Accordingly, the Court

16   denies Defendants' motion for summary judgment with respect to the ADEA claim.

17

18         **B.      Second Cause of Action: Violation of the ADA**

19

20        The ADA prohibits discrimination "against a qualified individual on the basis of

21   disability."  42 U.S.C. § 12112(a); Kennedy v. Applause, Inc., 90 F.3d 1477 (9th Cir.

22   1996).  Adverse employment action motivated even in part by animus against an

23   employee's disability or because of a request for accommodation is prohibited.  Head v.

24   Glacier Northwest Inc., 413 F.3d 1053, 1065 (9th Cir. 2005).

25   ///

26   ///

27   ///

28   ///

1    In her SAC, Plaintiff alleged that Kaiser violated the ADA by discriminating against

2 her because of her disability, failing to provide reasonable accommodation, subjecting

3 Plaintiff to harassment and hostile work conditions, and retaliating against her for

4 complaining and for taking a medical leave of absence.[9]  (ECF No. 48 ¶ 31.)  The Court

5 will analyze each allegation below.

6

7         **1.    Discrimination Due to Disability (Failure to Provide Reasonable Accommodation)**[10]

8

9    The ADA prohibits an adverse employment action taken because the employer

10 failed to make "reasonable accommodations to the known physical and mental limitation

11 of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  To

12 establish a prima facie case for failure to accommodate under the ADA, Plaintiff must

13 show that (1) she is disabled within the meaning of the ADA; (2) she is a qualified

14 individual under the ADA; and (3) she suffered an adverse employment action because

15 of her disability.  Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th

16 Cir. 2012).  Defendants do not dispute that Plaintiff was disabled within the meaning of

17 the ADA or that Plaintiff has suffered an adverse employment action.  However, they

18 contend that Plaintiff is not a "qualified individual" because she is permanently unable to

19 work, with or without reasonable accommodation.  (ECF No. 71 at 14.

20 ///

21

22         [9] Plaintiff's second cause of action also contains a number of allegations not relevant to the ADA claim, for example, that Kaiser deliberately sent patient records to Plaintiff's home after her termination

23 and that Kaiser's pre-leave treatment of Plaintiff caused her disability.  (See SAC ¶¶ 29, 30.)  The Court will disregard these immaterial allegations.

24         [10] Defendants analyze Plaintiff's discrimination due to disability claim and failure to provide

25 reasonable accommodation claim separately, while noting that Plaintiff's discrimination claim "is more appropriately recognized not as a disability discrimination claim, but as a failure to accommodate claim."

26 (See ECF No. 71 at 13-14.)  The Ninth Circuit explained that "failure to provide reasonable accommodation to 'an otherwise qualified individual with a disability' constitutes discrimination."  Kaplan v.

27 City of North Las Vegas, 323 F.3d 1226, 1232 (9th Cir. 2003).  In her response, Plaintiff has not clarified the basis of her "discrimination due to disability" allegations.  Accordingly, the Court concludes that

28 Plaintiff's "discrimination due to disability" claim arises out of Defendants' alleged failure to accommodate Plaintiff's disability and will analyze it as such.

1    The ADA defines "qualified individual" as "an individual with a disability who, with

2  or without reasonable accommodation, can perform the essential functions of the

3  employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "A

4  plaintiff bears the burden of demonstrating that she can perform the essential functions

5  of her job with or without reasonable accommodation."  Kennedy, 90 F.3d at 1481.

6    Defendants argue that Plaintiff was not a qualified individual entitled to protections

7  against termination under the ADA because she was not able to work at all when Kaiser

8  terminated her.  (ECF No. 71 at 14-15.)  Defendants correctly point out that an employee

9  who is "unable to perform the job no matter what its essential functions [are]" is not a

10  qualified individual for the purposes of the ADA.  Kennedy, 90 F.3d at 1481; see also

11  Samper, 675 F.3d at 1237 ("It is a rather common-sense idea . . . that if one is not able

12  to be at work, one cannot be a qualified individual.") (citation omitted).  However,

13  contrary to Defendants' contention, Plaintiff has presented sufficient evidence to create a

14  genuine issue of material fact as to whether she could perform her job when she

15  returned to work in February of 2009.

16    It is undisputed that Plaintiff returned to work on February 2 and 3, 2009.  Kaiser

17  did not present any evidence demonstrating that Plaintiff did not perform her job duties

18  satisfactorily on those days.  For her part, Plaintiff stated in her Declaration that she

19  could perform essential functions of her job and would have continued performing them

20  had Kaiser provided adequate accommodations for her disability.  (Wynes Decl., ECF

21  No. 94 ¶ 42.)  Accordingly, the Court concludes that Plaintiff presented sufficient

22  evidence to create a genuine factual dispute as to whether she was a qualified individual

23  within the meaning of the ADA.

24    The next issue for the Court is whether Plaintiff has carried her burden of

25  demonstrating that Defendants failed to accommodate her disability.  A plaintiff "has the

26  burden of showing the existence of a reasonable accommodation that would have

27  enabled him to perform the essential functions" of the job.  Dark v. Curry County,

28  451 F.3d 1078, 1088 (9th Cir.2006).

1    To avoid summary judgment, a plaintiff "need only show that an 'accommodation' seems

2    reasonable on its face, i.e., ordinarily or in the run of cases." U.S. Airways, Inc. v.

3    Barnett, 535 U.S. 391, 401–02 (2002).  Defendants argue that Plaintiff failed to show the

4    existence of a reasonable accommodation because "granting [Plaintiff] an indefinite,

5    open-ended leave of absence would not have been a 'reasonable accommodation.'"

6    (ECF No. 71 at 15.)

7         "Unpaid medical leave may be a reasonable accommodation under the ADA. . . .

8    Even an extended medical leave, or an extension of an existing leave period, may be a

9    reasonable accommodation if it does not pose an undue hardship on the employer."

10   Nunes v. Wal–Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir.1999).  However, an

11   employer need not provide an indefinite leave of absence:

12
13         Nothing in the text of the reasonable accommodation
           provision requires an employer to wait an indefinite period for
           an accommodation to achieve its intended effect.  Rather,
14         reasonable accommodation is by its terms most logically
           construed as that which presently, or in the immediate future,
           enables the employee to perform the essential functions of
15         the job in question. . . . [R]easonable accommodation does
           not require [an employer] to wait indefinitely for [the
16         employee's] medical conditions to be corrected.

17   Myers v. Hose, 50 F.3d 278, 283 (4th Cir.1995).  Here, it is undisputed that (1) Plaintiff

18   had been on medical leave of absence from February 15, 2008, until February 2, 2009;

19   (2) Plaintiff returned to work on February 2, 2009, with a release from her doctor to work

20   a limited schedule; (3) Plaintiff worked as a PCC at Kaiser-Morse on February 2 and 3,

21   2009; (4) Plaintiff did not show up for work on February 4, 2009, but left a telephone

22   message stating that her back was "grieving" her and that she was unable to work;

23   (5) on February 18, 2009, Plaintiff's physician informed Kaiser that Plaintiff was unable to

24   return to work at Kaiser, and provided no anticipated date for Plaintiff's return to work.

25   (SUF ¶¶ 4, 10, 13, 14, 16.)  In light of Plaintiff's extended leave of absence (with several

26   extensions provided by Kaiser) and her doctor's inability to provide a date of Plaintiff's

27   anticipated return to work, it was reasonable for Kaiser to refuse to extend Plaintiff's

28   medical leave of absence any further.

1    However, Plaintiff's failure to accommodate claim is not limited to Kaiser's refusal

2    to extend her leave of absence.  Plaintiff has presented sufficient evidence that Kaiser

3    failed to provide her with adequate work space to accommodate her physical disability

4    when she returned to work on February 2, 2009, which caused her further injury and

5    required an additional leave of absence.  (Wynes Decl., ECF No. 94 ¶¶ 42, 44; ECF

6    No. 95-4 Ex. J.)  In particular, Plaintiff states in her Declaration:

7            When I returned to workplace, I was immediately placed into
             a new space where it was obvious I would at least be
8            uncomfortable if not completely unable to work.  When sitting
             at the chair provided in the tiny space that lacked adequate
9            desk area, I could not write to take notes while engaged in a
             mandated . . . orientation.  In order to write while seated at
10           the drop leaf arm type chair, I had to raise my arm in a
             manner that was difficult, painful and nearly impossible.  This
11           unaccommodating physical set up was designed to prevent
             me from succeeding.
12

13   (Wynes Decl., ECF No. 94 ¶ 44.)

14           Plaintiff also presented evidence that she expressed her concerns regarding the

15   inadequate work station set-up to her supervisors.  (ECF No. 95-4 Ex. J.)  In response to

16   Plaintiff's complaint about lack of sufficient desk space, Defendant Ruby Gartrell advised

17   Plaintiff to stand to take notes or "just write holding a tablet."  (Id.; ECF No. 95-8.)

18   Plaintiff claims that requiring her to stand while taking notes was "not an option" in light

19   of her disability.  (ECF No. 95-4 Ex. J.)  According to Plaintiff, the unaccommodating

20   physical set-up caused her back pain which resulted in her inability to return to work on

21   February 4, 2009.  (SUF 14.)

22           The Court concludes that Plaintiff has presented sufficient evidence to at least

23   create a genuine factual dispute with respect to Defendant's failure to provide

24   reasonable accommodation for her disability when she returned to work on February 2,

25   2009.  Accordingly, the Court denies Defendants' motion for summary judgment on

26   Plaintiff's failure to accommodate claim under the ADA.

27   ///

28   ///

19

1

          **2.**       **Harassment Due to Disability**

2

3          Plaintiff alleges that Kaiser subjected her to "harassing and hostile work

4   conditions" in violation of the ADA.  (SAC ¶ 31.)  Defendants rely on <u>Brown v. City of</u>

5   <u>Tucson</u>, 336 F.3d 1181, 1990 (9th Cir. 2003), in arguing that a hostile work environment

6   claim is not actionable under the ADA.  (ECF No. 71 at 15.)  In <u>Brown</u>, the Ninth Circuit,

7   while declining to rule on whether a plaintiff can bring a claim for hostile work

8   environment or harassment under the ADA, did not foreclose such a possibility.

9   336 F.3d at 1190.  Several other circuits have recognized hostile work environment as

10   an actionable ADA claim because of the similarity between the language of the ADA and

11   Title VII.  <u>See</u> <u>Shaver v. Indep. Stave Co.</u>, 350 F.3d 716, 719–20 (8th Cir.2003); <u>Fox v.</u>

12   <u>Gen. Motors Corp.</u>, 247 F.3d 169, 175 (4th Cir.2001); <u>Flowers v. S. Reg'l Physician</u>

13   <u>Servs., Inc.</u>, 247 F.3d 229, 233 (5th Cir.2001).

14          Assuming for the purposes of this motion only that the Ninth Circuit would

15   recognize a hostile work environment claim under the ADA, Plaintiff would have to

16   demonstrate that (1) she is a qualified individual with disability; (2) she suffered from

17   unwelcome harassment; (3) the harassment was based on her disability or a request for

18   accommodation; (4) the harassment was sufficiently severe or pervasive to alter the

19   conditions of her employment and to create an abusive working environment; and

20   (5) Defendants knew or should have known of the harassment and failed to take prompt

21   remedial action.  <u>See</u> <u>Walton v. Mental Health Ass'n</u>, 168 F.3d 661, 667 (3th Cir.1999)

22   (applying Title VII hostile work environment standard to a claim stated under the ADA).

23          To determine whether the alleged harassment was sufficiently severe or

24   pervasive to be actionable, the Court should consider "all the circumstances, including

25   the frequency of discriminatory conduct; its severity; whether it was physically

26   threatening, or a mere offensive utterance; and whether it unreasonably interferes with

27   an employee's work performance."

28   ///

1  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (citation and internal

2  quotation marks omitted) (defining harassment under Title VII).  A plaintiff asserting a

3  hostile work environment claim must demonstrate that "the workplace [was] permeated

4  with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or

5  pervasive to alter the conditions of the victim's employment and create an abusive

6  working environment.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116

7  (2002).

8         The record before the Court lacks evidence that Kaiser harassed Plaintiff either

9  because of her disability or because of her accommodation requests.  In support of her

10  hostile work environment claim, Plaintiff states in her opposition:

11              [A]s harassment, defendants assigned her to a demeaning
               and unnecessary orientation, to be provided by a peer who
12              was, undeservedly, under a disciplinary action. . . .  They
               carelessly packed and took her belongings from her former
13              office and desk in a box, and all supervisors made clear she
               was not welcomed back and was not going to be allowed to
14              do her work without harassment.

15  (ECF No. 110 at 15.)  Examples of Kaiser's acts, which Plaintiff views as creating hostile

16  work environment, do not rise to the level of "severe and pervasive" harassment that

17  would be actionable under Title VII or, potentially, the ADA.    Plaintiff's dissatisfaction

18  with how Kaiser accommodated her disability also does not give rise to a claim for

19  hostile work environment harassment.[11]  See Kilgore v. Tulare County, 2012 WL

20  483085, at *10 (E.D. Cal. Feb. 14, 2012.)  Accordingly, summary judgment for

21  Defendants is appropriate on Plaintiff's harassment claim under the ADA.

22  ///

23  _____

24       [11] In her opposition, Plaintiff also argues that Defendants "plagued and harassed" her in 2007, by
     creating false and degrading write-ups and suggested discipline.  (ECF No. 110 at 15.)  However,
25   Plaintiff's ADA claim in the SAC states that the alleged harassment was the result of Plaintiff "taking a
     medical leave of absence" in 2008-2009.  (See SAC ¶¶ 27, 31.)  Because the alleged acts of "harassment"
26   predate Plaintiff's 2008-2009 leave of absence, they could not be caused by Plaintiff taking that medical
     leave of absence.  It does not help that, in support of her "harassment" argument, Plaintiff cites to
27   paragraph 45 of her Declaration, which appears to address the issue of racial discrimination and Kaiser's
     "war of attrition on the older PCC's."  (See Wynes Decl., ECF No. 94 ¶ 45.)  Accordingly, the Court will
28   disregard Plaintiff's arguments with respect to Defendants' harassing acts which predate Plaintiff's 2008-
     2009 leave of absence.

1

2

### 3.    Retaliation

As pled in the SAC, Plaintiff's retaliation claim pursuant to the ADA appears to be split between two causes of action.  Plaintiff's second cause of action for violation of the ADA states that Defendants retaliated against Plaintiff for "making a claim and taking a medical leave of absence."  (SAC ¶ 31.)  Plaintiff's fourth cause of action for discrimination and retaliation in violation of federal and state law and public policy contains the following allegation: "Plaintiff Wynes was discriminated against for reporting violations of the ADA she suffered.  She was retaliated against for seeking, unsuccessfully accommodation for her disability and suffered unwarranted adverse employment actions, including a wrongful termination."  (Id. ¶ 37.)  Because both claims allege Kaiser's retaliatory actions in violation of the ADA, the Court will consider them together.

Although Defendants move for summary judgment with respect to both the third and fourth causes of action alleged in the SAC, they have not addressed Plaintiff's retaliation claims under the ADA in their motion.  Accordingly, Plaintiffs' retaliation claims under the ADA will proceed.

Based on the foregoing, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's harassment claim under the ADA, and will deny it in all other respects.

### C.    Third Cause of Action: Discrimination and Retaliation in Violation of Federal and State Law and Public Policy

This cause of action appears to combine two distinct theories: (1) Plaintiff was paid less than Caucasian PCCs; and (2) Plaintiff was retaliated against because she was a "whistleblower."[12]  (SAC ¶¶ 35, 36.)

---

[12] Plaintiff's third cause of action also contains other allegations, including retaliation for reporting violations of the ADA, (see SAC ¶ 37), and wrongful termination because of Plaintiff's disability, (see SAC ¶ 35).  These claims appear to be duplicative to the claims alleged in Plaintiff's second and fourth causes

1          **1.      Pay Disparity**

2

3          The SAC does not cite to any statutory provision on which Plaintiff bases her pay

4    disparity claim.  The Court believes that Plaintiff's claim arises of Title VII's prohibition on

5    discrimination against an employee with respect to compensation because of the

6    employer's race.  42 U.S.C. § 2000e-2(a)(1).

7          As a threshold matter, Defendants argue that Plaintiff's pay disparity claim and

8    other claims based on the alleged racial discrimination fail because Plaintiff has not

9    exhausted the requisite administrative remedies prior to bringing these claims.  (ECF

10   No. 71 at 17.)

11         Under Title VII, a plaintiff must exhaust her administrative remedies by filing a

12   complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") "thereby

13   affording the agency an opportunity to investigate the charge."  B.K.B. v. Maui Police

14   Dep't, 276 F.3d 1091, 1099 (9th Cir.2002) (citing 42 U.S.C. § 2000e–5(b)).  "[S]ubstantial

15   compliance with the presentment of . . . complaints to an appropriate administrative

16   agency is a jurisdictional prerequisite."  Sommatino v. U.S., 255 F.3d 704, 708 (9th Cir.

17   2001).  "The jurisdictional scope of a Title VII claimant's court action depends upon the

18   scope of both the EEOC charge and the EEOC investigation."  Paige v. State of Cal.,

19   102 F.3d 1035, 1041 (9th Cir.1996) (citation and internal quotation marks omitted).  The

20   district court can entertain a Tile VII claim if "that claim fell within the scope of the

21   EEOC's actual investigation or an EEOC investigation which [could] reasonably be

22   expected to grow out of the charge of discrimination."  Id.

23   ///

24   ///

25   ///

26

27   of action.  Because Plaintiff's wrongful termination allegations are also subject of Plaintiff's fourth cause of
     action, the Court will analyze them when it evaluates the merits of Plaintiff's other wrongful termination
     arguments.  Also, as mentioned above, the Court views Plaintiff's retaliation allegations as part of
28   Plaintiff's second cause of action and thus does not analyze them separately here.

1    Plaintiff filed a complaint with the California agency, the Department of Fair

2    Employment and Housing ("DFEH"), and cross-filed it with the EEOC on March 24,

3    2009.  (Wynes Decl., ECF No. 94 ¶ 54.)  Plaintiff's initial complaint, however, did not

4    include a charge of racial discrimination in compensation.  (Id.)  Plaintiff received a right-

5    to-sue letter from the DFEH on March 24, 2009.  (Id.)  On March 19, 2010, after retaining

6    counsel, Plaintiff submitted a Supplement to her initial complaint which included an

7    allegation of racial discrimination.  (Dove Decl., ECF No. 85 ¶ 3 & Ex. 1.)  After Plaintiff's

8    counsel sent several letters to the DFEH requesting reopening of Plaintiff's claim,

9    Plaintiff received a Notice of Filing of Amended Discrimination Complaint, dated

10   August 4, 2010.  (Dove Decl., ECF No. 85 ¶¶ 3-5 & Exs. 2-5.)  Included in the envelope

11   with the certified letter from the DFEH was a document labeled Amended Complaint and

12   also the Supplement alleging Kaiser's racial discrimination stamped "received March 25,

13   2010."  (Dove Decl., ECF No. 85 ¶ 63 & Exs. 6-7.)

14   Defendants, however, argue that no official record exists demonstrating that

15   Plaintiff's racial discrimination claim was included within the right-to-sue letter originally

16   issued by the DFEH.  (ECF No. 71 at 17.)  In support of its argument, Defendants

17   presented a document entitled "Certification In Response to Public Records Request,"

18   dated April 6, 2011, which the DFEH produced in response to Defendants' request for

19   records.  (ECF No. 73 Exs. 12-13.)  According to that document, a search of the files and

20   computer records maintained by the DFEH produced no additional complaints filed by

21   Plaintiff with the DFEH.  (Id.)

22   Because a factual dispute exists as to whether Plaintiff has exhausted the

23   requisite administrative remedies with respect to her pay disparity claim, Defendants are

24   not entitled for summary judgment on the basis of their exhaustion argument.

25   Accordingly, the Court will proceed to the merits of Plaintiff's claim.

26   ///

27   ///

28   ///

1    Plaintiff's disparate treatment claim is analyzed under the McDonnel Douglas

2  burden-shifting framework.  Coghlan, 413 F.3d at 1093-94.  Accordingly, to prevail on

3  her claim, Plaintiff must first establish a prima facie case that gives rise to an inference of

4  unlawful discrimination.  See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018,

5  1028 (9th Cir.2006).  In addition to demonstrating that she was a member of the

6  protected class, Plaintiff must establish that the employer treated her "differently than a

7  similarly situated employee who does not belong to the same protected class as the

8  plaintiff."  Id.  In the context of pay disparity claims, this requirement means that Plaintiff

9  must show that she was paid less than a non-member of the protected class for work

10 requiring substantially the same responsibility.  See Taylor v. United Parcel Serv., Inc.,

11 554 F.3d 510, 522 (5th Cir. 2008).

12    In support of her pay-disparity claim, Plaintiff presented her own declaration and

13 declarations of two other Kaiser PCCs, Marsha Scribner and Sharyn Sephus.  (See

14 Wynes Decl., ECF No. 94 ¶¶ 6, 23, 33; Scribner Decl., ECF No. 89 ¶ 1; Sephus Decl.,

15 ECF No. 99 ¶ 2.)  According to these declarations, during a meeting with Plaintiff's

16 counsel in 2009, an unidentified Caucasian woman who had worked at Kaiser for about

17 eight years stated that her hourly rate in 2008 was $56, while Plaintiff's rate was only

18 $54 per hour.  (Scribner Decl., ECF No. 89 ¶ 1; Sephus Decl., ECF No. 99 ¶ 2.)  That

19 unidentified woman allegedly opined that "it was obvious to all that there was racial

20 discrimination."  (Sephus Decl., ECF No. 99 ¶ 2.)  Pursuant to Federal Rule of Civil

21 Procedure 56(c)(4), a party may rely on affidavits to support or oppose summary

22 judgment, but these affidavits "must be made on personal knowledge, set out facts that

23 would be admissible in evidence, and show that the affiant is competent to testify on the

24 matters stated."  The Ninth Circuit explained: "It is well settled that only admissible

25 evidence may be considered by the trial court in ruling on a motion for summary

26 judgment."  Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir.1988);

27 see also Fed. R. Civ. P. 56(c).

28 ///

1    The principal problem with Plaintiff offering the above-mentioned statement into

2    evidence is that the statement is inadmissible hearsay because Plaintiff purports to offer

3    it for the truth of the matter asserted.  See Fed. R. Evid. 801(a).  Since Plaintiff has not

4    demonstrated that she can present this evidence in admissible form at trial, Plaintiff

5    cannot use it to defeat Defendants' summary judgment motion.  See Kim v. United

6    States, 121 F.3d 1269, 1276–77 (9th Cir.1997).

7    However, Plaintiff's evidence in support of her pay disparity claim is not limited to

8    the statement of an unidentified Caucasian woman.  Ms. Scribner, a Caucasian

9    employee who had worked at Kaiser for eight years before being terminated in 2008,

10   stated in her declaration that her last pay rate was about $55.90 per hour.  (Scribner

11   Decl, ECF No. 89 ¶ 2.)  According to Plaintiff's declaration, she was paid a dollar less

12   per hour than Ms. Scribner even though she had been working at Kaiser for over twenty

13   years.  (Wynes Decl., ECF No. 91 ¶¶ 1, 33.)  Additionally, Kaiser conceded that all PCCs

14   at Kaiser, except for Plaintiff, received salary increases in March 2008.  (LaMay Decl.,

15   ECF No. 72 ¶ 5.)  This evidence is sufficient to demonstrate that Plaintiff was paid less

16   than a non-African American PCC at Kaiser for substantially equal work.

17   Accordingly, Plaintiff has made a prima facie showing of pay disparity based on

18   race.  The burden now shifts to Defendants to articulate a non-discriminatory reason for

19   the disparity in compensation.  See Wallis, 26 F.3d 885, 889 (9th Cir.1994).  Defendants

20   have presented a Declaration of Luann LaMay, the director of the Continuity of Care

21   Services Department at the Kaiser Medical Center on Morse Avenue in Sacramento,

22   California, who stated that all PCCs at Kaiser-Morse received salary increases in

23   December 2007 that brought their salaries to $114,000, including Plaintiff.  (LaMay

24   Decl., ECF No. 72 ¶ 4.)  LaMay further stated that all PCCs at Kaiser-Morse, except

25   Plaintiff, received additional increases in March 2008.  (Id. ¶ 5.)  Although Plaintiff was

26   not given a raise in 2008, all other African-American PCCs at Kaiser-Morse received

27   such salary increases, and the highest paid PCC at Kaiser-Morse in February of 2009

28   was an African-American woman, Barbara Mitchell.  (Id. ¶ 6.)

1   According to LaMay, Plaintiff did not receive the raise because she was on a leave of
2   absence at that time and was thus ineligible for any pay increase.  (Id. ¶ 5.)

3   Because Defendants have articulated a non-discriminatory reason for the pay
4   disparity between Plaintiff's salary and salaries of other PCCs at Kaiser, the burden
5   shifts back to Plaintiff to show that the reason articulated by her former employer is a
6   pretext for a discriminatory motive.  See Wallis, 26 F.3d at 889.
7   Plaintiff has failed to meet this burden.  Instead of presenting admissible evidence of a
8   pretext, Plaintiff relies on the same hearsay statement of an unidentified Caucasian
9   woman who allegedly earned more than African-American employees at Kaiser-Morse
10  that the Court has already refused to consider.  Plaintiff also relies on declarations of
11  Ms. Sephus and Ms. Scribner who "do not believe" that all PCCs earned the same
12  amount in 2007 and 2008.  (See Scribner Decl., ECF No. 89 ¶ 3; Sephus Decl., ECF
13  No. 99, ¶ 3.)  As explained above, the factual inquiry regarding pretext requires Plaintiff
14  to produce specific and substantial evidence that Kaiser's articulated reason for the pay
15  disparity was really a pretext for discrimination.  See Aargon, 292 F.3d at 661.
16  Speculations and subjective beliefs do not satisfy this heightened standard of specificity.

17  Accordingly, Plaintiff has failed to demonstrate any genuine factual dispute with
18  respect to her pay disparity claim, and thus summary judgment for Defendants is proper
19  on this claim.

20

21  **2.     Whistleblower claim**

22

23  In the SAC, Plaintiff alleged that she suffered retaliation for being a
24  "whistleblower" who complained about "patient treatment and breaches of contract with
25  the subscribers and the health care provider."  (SAC ¶ 36.)
26  ///
27  ///
28  ///

27

1  Although Plaintiff styled her "whistleblower" claim as a claim based on "federal and state

2  law and public policy," she has never identified a discernible statute or public policy from

3  which her claim arises.  Even at this advanced stage of litigation, it remains unclear from

4  Plaintiff's filings what the basis of her "whistleblower" claim is.

5      Defendants suggest, and the Court agrees, that the statutory provision on which

6  Plaintiff relies in bringing her "whistleblower" claim is likely embodied in California Labor

7  Code § 1102.5, which prohibits retaliating against an employee for disclosing information

8  to a government or law enforcement agency.  California Labor Code § 1102.5 provides,

9  in relevant part:

10          (a) An employer may not make, adopt, or enforce any rule,
            regulation, or policy preventing an employee from disclosing
11          information to a government or law enforcement agency,
            where the employee has reasonable cause to believe that the
12          information discloses a violation of state or federal statute, or
            a violation or noncompliance with a state or federal rule or
13          regulation.

14          (b) An employer may not retaliate against an employee for
            disclosing information to a government or law enforcement
15          agency, where the employee has reasonable cause to
            believe that the information discloses a violation of state or
16          federal statute, or a violation or noncompliance with a state or
            federal rule or regulation.
17
            (c) An employer may not retaliate against an employee for
18          refusing to participate in an activity that would result in a
            violation of state or federal statute, or a violation or
19          noncompliance.

20  (emphasis added).

21      Plaintiff's "whistleblower" claim fails because she has never complained to a

22  public agency about patient treatment or safety at Kaiser.  (See Wynes Dep. at

23  176:18-22.)  The only complaint about patient treatment that Plaintiff ever made was to

24  Kaiser management in 2000 or 2001.  (See SUF 20; Wynes Decl., ECF No. 94 ¶ 4B;

25  Wynes Dep. at 177:16-180:25.)  Even were the Court to view Plaintiff's complaint to

26  Kaiser management as a protected activity for the purposes of California Labor Code

27  § 1102.5, the eight-year span between the complaint and Plaintiff's termination negates

28  any inference of a causal link between these two events.

28

1  See Manatt v. Bank of Am., 339 F.3d 792, 802 (9th Cir. 2002) ("While courts may infer

2  causation based on the proximity in time between the protected action and the allegedly

3  retaliatory employment decision, such an inference is not possible in this case because

4  approximately nine months lapsed between the date of [plaintiff's] complaint and the

5  [employer's] alleged adverse decisions.") (internal citations and quotation marks

6  omitted); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)

7  (concluding that an 18-month lapse between the protected activity and an adverse

8  employment action was too long to raise an inference of causation); Rosales v. Career

9  Sys. Dev. Corp., 2009 WL 3644867, at *14 (E.D. Cal. Nov. 2, 2009) (concluding that 20

10  months between the complaint and termination negated inference of causation).

11  Moreover, Plaintiff presented no evidence that the disability consultant Thomas, who

12  initiated Plaintiff's termination, was even aware that Plaintiff made any such complaint in

13  2000 or 2001.

14       The Court notes that, in response to Defendant's motion for summary judgment

15  with respect to the "whistleblower" claim, Plaintiff raises issues of retaliation that go

16  beyond those pled in the SAC.  In particular, Plaintiff now claims that she made

17  complaints about her treatment at Kaiser to both Kaiser management and outside

18  authorities, including reporting a battery by Luann LaMay.  (ECF No. 110 at 4.)

19  However, Plaintiff's "whistleblower claim" in the SAC is limited to Kaiser's retaliatory

20  conduct in response to Plaintiff complaining about violations of law regarding patient

21  treatment and safety.[13]  (See SAC ¶ 36.)  The Ninth Circuit has explained that where, as

22  here, "the complaint does not include the necessary factual allegations to state a claim,

23  raising such claim in a summary judgment motion is insufficient to present the claim to

24  the district court."

25  ///

26

27  _____
   [13] As mentioned above, Plaintiff's third cause of action also contains a claim for discrimination caused by Plaintiff's reporting of ADA violation.  (SAC ¶ 37.)  The Court analyzed this claim for relief in the section of this opinion devoted to Plaintiff's second cause of action arising out of Kaiser's alleged ADA

28  violations.  Accordingly, the Court does not analyze the ADA retaliation claim here.

1   Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008); see also

2   Wasco Products, Inc. v. Southwall Tech., Inc., 435 F.3d 989, 992 (9th Cir. 2006 ("[T]he

3   necessary factual averments are required with respect to each material element of the

4   underlying legal theory. . . . Simply put, summary judgment is not a procedural second

5   chance to flesh out inadequate pleadings.") (citation omitted).  Because the SAC did not

6   give Defendants notice of the factual allegations presented for the first time in Plaintiff's

7   response to Defendant's summary judgment motion, the Court disregards those new

8   factual allegations.

9       Accordingly, the Court concludes that no genuine issue as to any material fact

10  remains with respect to Plaintiff's "whistleblower" claim.  Thus, summary judgment for

11  Defendants on Plaintiff's third cause of action is proper.

12

13      **D.    Fourth Cause of Action: Wrongful Termination in Violation of Public**
           **Policy**
14

15      In her SAC, Plaintiff alleged that she was terminated in violation of public policy

16  prohibiting termination for discriminatory reasons, including based on race, age and

17  disability.  (SAC ¶ 40.)

18      An employer may not terminate employment for a reason that contravenes

19  fundamental public policy grounded in a specific constitutional or statutory provision.

20  Colores v. Bd. of Trustees, 105 Cal. App. 4th 1293, 1306 (2003) (citing Turner v.

21  Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1252 (1994)).  To sustain a wrongful termination

22  claim in violation of public policy, the plaintiff must establish that the dismissal violated a

23  policy that is: (1) fundamental; (2) beneficial for the public; and (3) embodied in a statute

24  or constitutional provision.  Id. at 1307.

25      With respect to age and disability discrimination, Plaintiff's wrongful termination

26  claim is based on the same statutory provisions and arises out of the same facts as her

27  first two causes of action.

28  ///

                                    30

1   Because the Court concluded that genuine issues of material facts exist with respect to

2   Plaintiff's ADEA and ADA claims, the Court will deny summary judgment with respect to

3   Plaintiff's wrongful termination claim based on age and disability discrimination.  See

4   Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1118 (9th Cir.2011) ("Because

5   [plaintiff's] discrimination claim under FEHA survives summary judgment, so too does

6   her claim for wrongful termination in violation of public policy.").

7            Additionally, Plaintiff argues that she was wrongfully terminated in violation of

8   public policy prohibiting terminating employees based on race.  This claim is fashioned

9   not as a statutory claim but as a public policy claim; however, it cites to California's Fair

10  Employment and Housing Act (FEHA) as the basis for public policy.  (See SAC ¶ 40.)

11  Defendants argue that, to the extent Plaintiff's fourth claim for relief is based on Kaiser's

12  alleged race discrimination, the claim fails for several reasons: (1) if a statutory remedy

13  is available, then the plaintiff cannot "end-run" the statute by pleading a common law

14  action for wrongful discharge; (2) Plaintiff cannot establish a prima facie case of race

15  discrimination for the same reason that she cannot establish a prima facie case of age

16  discrimination; and (3) even if Plaintiff could establish a prima facie case of race

17  discrimination, she could not overcome Kaiser's legitimate, non-discriminatory

18  explanation for her termination.  (ECF No. 71 at 19.)

19          Defendants first argue that Plaintiff cannot assert a wrongful termination claim

20  based on public policy because she has not brought a claim under FEHA in this action.

21  (Id.)  Defendants specifically rely on Jennings v. Marralle, 8 Cal.4th 121 (1994), and

22  Reno v. Baird, 18 Cal.4th 640 (1998).  These cases do not stand for the proposition

23  advanced here by Defendants.  In both cases, the California Supreme Court held that a

24  plaintiff may not bring a cognizable public policy claim based on a provision of FEHA

25  when Plaintiff's FEHA claim based on the same events fails or would fail.

26  ///

27  ///

28  ///

1  See Jennings, 8 Cal.4th at 129-136 (concluding that the plaintiff could not bring a claim

2  for wrongful termination in violation of public policy arising out of FEHA's age

3  discrimination provision because FEHA did not make discrimination by an employer of

4  less than five persons unlawful); Reno, 18 Cal.4th at 643 (concluding that the plaintiff

5  could not sue her individual supervisor for wrongful discharge in violation of public policy,

6  since the public policy on which her action was based was that of the FEHA and FEHA

7  did not create a cause of action against individual supervisors).

8          Defendants have not cited to any authority that states that a plaintiff may not bring

9  a viable claim for wrongful termination in violation of public policy if the plaintiff could, but

10  chose not to, bring a cognizable statutory claim.  Because Defendants do not argue that

11  Plaintiff cannot bring a cognizable FEHA claim for racial discrimination, they accordingly

12  cannot contend that a common law cause of action is not available to Plaintiff.

13          Defendant further argues that Plaintiff has failed to establish a prima facie case

14  that Kaiser was motivated by racial animus in firing her.  (ECF No. 71 at 19.)

15  Discrimination under FEHA and Title VII is proven using the same factors.  Johnson v.

16  County of Yolo, 2013 WL 657882, at *7 (E.D. Cal. Feb 22, 2013); see also Guz v.

17  Bechtel Nat. Inc., 24 Cal.4th 317, 354 (2000) ("Because of the similarity between state

18  and federal employment discrimination laws, California courts look to pertinent federal

19  precedent when applying our own statutes.).  To establish a prima facie case of race

20  discrimination, a plaintiff must show

21                  (1) that the plaintiff belongs to a class of persons protected by
                     Title VII; (2) that the plaintiff performed his or her job
22                  satisfactorily; (3) that the plaintiff suffered an adverse
                     employment action; and (4) that the plaintiff's employer
23                  treated the plaintiff differently than a similarly situated
                     employee who does not belong to the same protected class
24                  as the plaintiff.

25  Cornwell, 439 F.3d at 1028 (emphasis added).

26          Here, it is undisputed that Plaintiff was on a leave of absence and did not work

27  from February 15, 2008, until February 2, 2009.  (SUF 4.)  Plaintiff returned to work on

28  February 2, 2009.  (SUF 10.)

1    After working for only two days, Plaintiff informed Kaiser that she was unable to return to

2    work because her back was "grieving" her.  (SUF 14.)  Subsequently, Plaintiff's doctor

3    informed Kaiser that Plaintiff was unable to return to work and provided no anticipated

4    date by which she would be able to return.  (SUF 16.)  Plaintiff was terminated from

5    Kaiser on March 17, 2009.  (SUF 17.)  Accordingly, Plaintiff was not working at the time

6    of her termination but essentially was on an unapproved leave of absence.  Even if

7    Plaintiff can demonstrate that she performed her job satisfactorily when she returned to

8    work on February 2, 2009, she presented no evidence demonstrating that Kaiser treated

9    "similarly situated" Caucasian employees differently by providing them with indefinite

10   leaves of absence under similar circumstances.

11         Even were the Court to conclude that Plaintiff established a prima facie case of

12   racial discrimination, the evidence presented by Plaintiff to defeat Defendants' motion for

13   summary judgment falls far short of "specific and substantial evidence" required to

14   demonstrate that a reason for terminating Plaintiff articulated by Kaiser was really a

15   pretext for discrimination.  See Aargon, 292 F.3d at 661.

16         As mentioned above, Kaiser maintains that it terminated Plaintiff's employment

17   because it concluded that it was unreasonable to extend Plaintiff's leave of absence

18   indefinitely.  (See ECF No. 71 at 12, 19.)  For her part, Plaintiff merely argues that

19   "[c]ircumstances permit the conclusion that race was one of the motivating factors in her

20   termination."  (ECF No. 110 at 17.)  To demonstrate those "circumstances," Plaintiff cites

21   to numerous paragraphs of her Declaration, which allegedly "amply reference"

22   Defendants' racism.  (Id.)  However, the Court's review of Plaintiff's Declaration has

23   revealed that several paragraphs, on which Plaintiff specifically relies, do not even

24   address the issue of racial discrimination as relevant to Plaintiff's wrongful termination

25   claim.  (See, e.g., Wynes Decl., ECF No. 94 ¶ 24 (dealing with Kaiser's policy to

26   terminate senior employees); ¶ 34 (dealing with discrimination based on disability); ¶ 35

27   (raising an evidentiary objection to Defendant's evidence); ¶¶ 34, 38, 40, 41 (dealing

28   with the pay disparity issue).)

1  Other paragraphs of Plaintiff's declaration, cited in Plaintiff's opposition, contain

2  nothing more than her general belief that her termination was the result of some sort of

3  discrimination, even though Plaintiff is not sure which one in particular.  (See, e.g., id.

4  ¶ 43 (speculating that race or disability or complaining was the reason Plaintiff was

5  denied promotions and provided the least desirable assignments); ¶ 45 (talking about

6  both racial discrimination and discrimination based on age as a motive for Kaiser's

7  unfavorable treatment of Plaintiff); ¶ 53 (stating that "prior harassment, pretextual write-

8  ups . . ., and other hostile actions toward me allow the conclusion some sort of

9  discriminatory animus was a motivating factor in my termination"); ¶ 56 ("It is difficult for

10  me to distinguish whether I was harassed for age, race, disability, exercising civil rights,

11  complaining about employer wrongdoing or informal whistle blowing.").)

12  Finally, the remaining declaration sections, on which Plaintiff relies, are filled with

13  legal conclusions and do not contain any admissible evidence demonstrating that Kaiser

14  was motivated by racial animus when it terminated Plaintiff or that Plaintiff was treated

15  differently from similarly situated Caucasian employees.  (See, e.g., id. ¶ 55 ("I believe

16  race was one of the motivating factors in my termination."); ¶ 57 (""I grew up in Detroit

17  and have experienced racial discrimination on many occasions.  I know it when I see it.  I

18  saw it when working at Kaiser.").)

19  Because Plaintiff failed to present any admissible evidence to demonstrate a

20  genuine factual dispute as to whether Kaiser was motivated by racial animus when it

21  terminated Plaintiff, Defendants are entitled to summary adjudication on this portion of

22  Plaintiff's wrongful termination claim.

23  For the reasons stated above, the Court will grant Defendants' motion for

24  summary judgment insofar as Plaintiff's fourth cause of action is based on Kaiser's

25  alleged racial discrimination and will deny it in all other respects.

26  ///

27  ///

28  ///

1

2

**E.      Fifth Cause of Action: Intentional Infliction of Emotional Distress**

3

In her SAC, Plaintiff alleged that Individual Defendants committed the tort of

4   intentional infliction of emotional distress ("IIED") by misrepresenting the facts and

5   circumstances regarding Plaintiff's performance, creating dishonest write-ups and

6   impugning her skills and worth as an employee.  (SAC ¶ 43.)  Plaintiff further alleged that

7   individual Defendants falsely and publicly asserted that Plaintiff's poor performance was

8   the reason for her termination by Kaiser, and "deprived [Plaintiff] of a favorable

9   recommendation in a depressed job market, thus limiting [her] future employment

10  prospects."  (Id.)

11        The elements of an IIED claim are as follows: (1) extreme and outrageous

12  conduct by the defendant with the intent of causing, or reckless disregard of the

13  probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

14  emotional distress; and (3) actual and proximate causation of the emotional distress by

15  the defendant's outrageous conduct.  Christensen v. Superior Court, 54 Cal. 3d 868, 903

16  (1991).  "[A]n essential element of such a claim is a pleading of outrageous conduct

17  beyond the bounds of human decency."  Janken v. GM Hughes Electronics, 46 Cal. App.

18  4th 55, 80 (1996).  "There can be no recovery for mere profanity, obscenity, or abuse,

19  without circumstances of aggravation, or insults, indignities or threats which are

20  considered to amount to nothing more than mere annoyances."  Yurrick v. Superior

21  Court, 209 Cal. App. 3d 1116, 11128 (1989) (internal citations omitted).  Even where

22  improper motivation underlies personnel management decisions, the remedy is not in an

23  IIED claim, but in a suit against the employer for discrimination.  Janken, 46 Cal. App.

24  4th at 80.

25        By its March 31, 2011 Order on Defendants' motion to dismiss Plaintiff's First

26  Amended Complaint, the Court dismissed, with leave to amend, Plaintiff's IIED claim for

27  failure to state a claim because Defendants' allegedly wrongful acts "do not meet the bar

28  for an IIED claim."  (ECF No. 44 at 24.)

1    Plaintiff added no allegations with respect to this cause of action in the SAC beyond

2    what she had stated in her FAC.  Thus, Plaintiff's allegations still amount to nothing more

3    than indignities and insults by individual Defendants and are not sufficient to recover

4    under a claim for IIED.

5          In her response to Defendants' motion for summary judgment, Plaintiff also failed

6    to present any evidence, or cite to any authority, that would elevate her allegations

7    above mere indignities.  In fact, Plaintiff has not addressed the IIED claim at all in her

8    opposition memorandum.  Because Plaintiff has not pleaded and has not provided any

9    evidence of Defendants' "outrageous conduct beyond the bounds of human decency,"

10   see Janken, 46 Cal. App. 4th at 80, Defendants are entitled to summary judgment on

11   this cause of action.

12

13         **F.      Sixth Cause of Action: Breach of Contract**

14

15         Plaintiff claims that Kaiser breached the implied covenant of good faith and fair

16   dealing implied in her employment contract by falsifying a reason to terminate Plaintiff

17   and by wrongfully terminating Plaintiff.  (SAC ¶¶ 47-48.)  Plaintiff also alleges that "[a]s a

18   further form of breach of contract and the implied covenant of good faith and fair dealing

19   and in violation of the intent of fair labor laws and laws prohibiting discrimination

20   because of race, . . . defendant employer paid the African American women, including

21   plaintiff Wynes, at a lesser pay rate for the same work as members of other races."  (Id.

22   ¶ 49.)

23         A claim for breach of an employment contract requires the actual existence of a

24   contract.  Guz, 24 Cal.4th at 337.  Absent any such employment contract, there can also

25   be no breach of the implied covenant of good faith and fair dealing which exists only "to

26   prevent one contracting party from unfairly frustrating the other party's right to receive

27   the benefits of the agreement actually made."  Id. at 349.

28   ///

1   The covenant of good faith "cannot be endowed with an existence independent of its

2   contractual underpinnings" and "cannot impose substantive duties or limits on the

3   contracting parties beyond those incorporated in the specific terms of the agreement."

4   Id. at 349-50.

5        Pursuant to California Labor Code § 2922, "employment, having no specified

6   term, may be terminated at the will of either party."  This statute establishes a

7   presumption of at-will employment in California that can only be overcome if there is

8   proof that the parties made an express agreement specifying the length of employment

9   or the grounds for termination.  See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 677

10  (1988).  In such a situation,

11           an employer may terminate its employees at will, for any or
             no reason.  A fortiori, the employer may act peremptorily,
12           arbitrarily, or inconsistently, without providing specific
             protections such as prior warning, fair procedures, objective
13           evaluation, or preferential reassignment.  Because the
             employment relationship is "fundamentally contractual" . . . ,
14           limitations on these employer prerogatives are a matter of the
             parties' specific agreement, express or implied in fact.  The
15           mere existence of an employment relationship affords no
             expectation, protectible by law, that employment will
16           continue, or will end only on certain conditions, unless the
             parties have actually adopted such terms.
17

18  Guz, 24 Cal.4th at 350.  Similarly, "if the employer's termination decisions, however

19  arbitrary, do not breach . . . a substantive contract provision, they are not precluded by

20  the covenant [of good faith and fair dealing]."  Id.  "The covenant of good faith and fair

21  dealing cannot impose substantive terms and conditions beyond those to which the

22  parties actually agreed."  Starzynski v. Capital Public Radio, Inc., 88 Cal.App.4th 33, 39

23  (2001).

24       However, the presumption of at-will employment may be overcome by "evidence

25  that despite the absence of a specified term, the parties agreed that the employer's

26  power to terminate would be limited in some way, e.g., by a requirement that termination

27  be based only on "good cause."  Foley, 47 Cal. 3d at 677.

28  ///

1  Plaintiff has produced no evidence and cited to no authority establishing that the parties

2  modified the at-will nature of her employment relationship with Kaiser.  Accordingly, even

3  if Plaintiff is correct that Kaiser did not have a good cause for terminating her, Plaintiff's

4  breach of contract claim fails as a matter of law. [14]  Similarly, Plaintiff does not have a

5  contractual remedy based on the alleged pay disparity because she has no evidence

6  that Kaiser paid her less than was agreed upon between the parties.

7       Accordingly, Defendants are entitled to summary judgment on Plaintiff's breach of

8  contract cause of action.

9

10  **G.    Seventh Cause of Action: Violation of ERISA**

11

12       Plaintiff alleges in the SAC that, by "prematurely and wrongfully" terminating

13  Plaintiff, Kaiser interfered with Plaintiff's completion of the time period that would allow

14  Plaintiff to acquire a vested interest in her pension benefits.  (SAC ¶ 53.)  Plaintiff's SAC

15  does not refer to any specific ERISA provisions that Kaiser allegedly violated.  It appears

16  that Plaintiff asserts a violation of Section 510 of ERISA, 29 U.S.C. § 1140, which

17  provides as follows:

18            It shall be unlawful for any person to discharge . . . or
          discriminate against a participant or beneficiary for exercising
19            any right to which he is entitled under the provisions of an
          employee benefit plan . . . or for the purpose of interfering
20            with the attainment of any right to which such participant may
          become entitled under the plan.
21

22  ///

23  ///

24

25     [14] In fact, Plaintiff concedes in her opposition that her employment at Kaiser was at-will.  (ECF No. 110 at 19.)  However, she argues that "[a]n at-will employer may not terminate [an employee] for

26  discriminatory reasons or in violation of public policy."  (Id.)  Plaintiff appears to confuse two distinct causes of action: breach of contract and wrongful termination in violation of public policy.  Plaintiff's allegations about Kaiser's discriminatory reasons for Plaintiff's termination are proper subject of Plaintiff's

27  fourth cause of action for wrongful termination in violation of public policy.  While Plaintiff can potentially prevail on that claim, she cannot base her breach of contract claim on a violation of public policy by Kaiser

28  in the absence of a specific contractual provision modifying Plaintiff's at-will employment.

1   Section 510 prevents an employer from arbitrarily discharging an employee

2   whose pension rights are about to vest.  Lojek v. Thomas, 716 F.2d 675, 680 (9th Cir.

3   1983).  To recover under Section 510, a plaintiff must "show that [the] defendant

4   terminated [her] with the specific intent to interfere with [her] rights under defendant's

5   benefits plans."  Kimbro v. Atl. Richfield Co., 889 F.2d 869, 881 (9th Cir.1989) (citation

6   and internal quotation marks omitted) (emphasis added).  Accordingly, no action lies

7   where the alleged loss of rights to some ERISA-covered benefit is a mere consequence

8   of, as opposed to a motivating factor behind, the termination.  Baker v. Kaiser Aluminum

9   & Chem. Corp., 608 F. Supp. 1315, 1319 (N.D. Cal. 1984).  The Ninth Circuit applies the

10  McDonnell Douglas burden-shifting analysis to Section 510 ERISA claims when there is

11  no direct evidence of the employer's specific intent to interfere with ERISA rights is

12  presented.  Ritter, 58 F.3d at 457.

13  Here, Plaintiff presented no evidence, direct or circumstantial, that Kaiser had

14  "specific intent" to interfere with Plaintiff's eligibility for ERISA-covered pension benefits.

15  There is no evidence that Kaiser's official who initiated Plaintiff's termination was even

16  aware of Plaintiff's pension status.  In her opposition, Plaintiff states that the fact that she

17  was terminated "as she was reaching the age and number of years which, when

18  combined, would qualify her for early retirement benefits" is sufficient to withstand

19  Defendant's motion for summary judgment.  The case law from this circuit suggests

20  otherwise.  See, e.g., Dytrt v. Mountain States Telephone & Telegraph, 921 F.2d 889,

21  896 (9th Cir. 1990) (dismissing a Section 510 claim where the only evidence produced

22  by the plaintiff was that had she remained employed by the defendant, the amount of her

23  pension benefits would have been higher); Baker, 608 F. Supp. at 1318-19 (concluding

24  that summary judgment for the employer is appropriate where "[t]he only evidence

25  offered by plaintiff is that if he had not been terminated, he would have been able to

26  accrue additional benefits.").

27  Accordingly, summary judgment for Defendants is proper on Plaintiff's ERISA

28  claim.

39

**CONCLUSION**

For the reasons detailed above, Defendants' Motion for Summary Judgment (ECF No. 75) is GRANTED IN PART and DENIED IN PART as follows:

1.  Defendants' Motion is GRANTED with respect to Plaintiff's THIRD cause of action (Discrimination and Retaliation in Violation of Federal and State Law and Public Policy), FIFTH cause of action (Intentional Infliction of Emotional Distress), SIXTH cause of action (Breach of Contract), and SEVENTH cause of action (Violation of ERISA).

2.  Defendants' Motion is DENIED with respect to Plaintiff's FIRST cause of action (Violation of the ADEA).

3.  With respect to Plaintiff's SECOND cause of action (Violation of the ADA), summary adjudication is GRANTED for Defendants on Plaintiff's "harassment" claim, and DENIED in all other respects.

4.  With respect to Plaintiff's FOURTH cause of action (Wrongful Termination in Violation of Public Policy), summary adjudication is GRANTED for Defendants insofar as Plaintiff's claim is based on racial discrimination, and DENIED in all other respects.

IT IS SO ORDERED.

DATED:  March 28, 2013

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

40